No. 36,118

First National Bank and Trust Company, of Oklahoma City, Oklahoma, *Appellant,* v. Roy E. Lovitt, County Treasurer, and The Board of County Commissioners of the County of Barton, *Appellees.*

(148 P. 2d 738)

Opinion filed May 6, 1944.

*R. C. Russell, John Henry Lewis* and *Isabel Obee,* all of Great Bend, were on the briefs for the appellant.

*Roy J. McMullen* and *Wayne H. Lamoreux,* both of Great Bend, were on the briefs for the appellees.

The opinion of the court was delivered by

Wedell, J.: This appeal involves two actions, one against the county treasurer and the other against the board of county commissioners of Barton county. Each action was framed in two counts. Each count sought the recovery of a real-estate mortgage registration fee paid under protest to the register of deeds of Barton county for the recording of a mortgage. The actions presented the same questions of law and were consolidated by agreement in the district court. We need therefore consider only the petition in one case. The appeal is from an order sustaining a general demurrer to each count of the amended petition.

The first question presented is whether the register of deeds erroneously required the payment of a real-estate mortgage registra-

tion fee before recording the mortgages which were tendered to him by the mortgagee, appellant, for recording.

It appears the form of the mortgages was the same or similar to that used generally in the state of Oklahoma, appellant's principal place of business, where oil and gas leases are held to be an interest in real estate. Appellant concedes that if the mortgages were actually on real estate a registration fee was properly required on each mortgage under the provisions of G. S. 1935, 79-3102, but it contends these were mortgages on oil and gas leases which are taxed as personal property in Kansas.

It is conceded the two mortgages are substantially the same in form and character. By agreement only the mortgage involved in the second count, and attached to the petition, is abstracted. Pertinent portions of that mortgage read:

"MORTGAGE

(Oil and Gas Special)

"THIS INDENTURE, Made this 12th day of December, 1942, between
Black-Marshall Oil Company
(hereinafter referred to, jointly and severally if more than one, as 'Mortgagor,' and so called herein, whether one or more) and THE FIRST NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, Oklahoma City, Oklahoma (hereinafter referred to as 'Mortgagee'),

"WITNESSETH:

"THAT, WHEREAS, The Mortgagor Black-Marshall Oil Company is justly indebted to the mortgagee in the sum of

Seven Hundred Twenty Thousand Dollars, ($720,000.00) and, as evidence of such indebtedness, has made and delivered the following described promissory note(s), payable to the Mortgagee's order at its banking rooms in Oklahoma City, Oklahoma, to-wit:

"1. Note dated December 12, 1942, in the principal sum of $520,000.00, due August 20, 1943, payable in installments as therein provided.

"2. Ten identical notes, each dated December 12, 1942, in the principal amount of $20,000.00 each, due August 20, 1943, payable in installments as therein provided.

"Now, THEREFORE, In consideration of the making of the above loan, and to secure, assure and provide for the prompt payment thereof, as well as of all other sums which may from time to time be secured hereby as hereinafter provided, and the full performance by the Mortgagor of every covenant and agreement contained herein, the Mortgagor has and does by these presents grant, sell, assign, transfer, set over, convey, pledge, hypothecate and mortgage unto the Mortgagee *all of the following described property* (hereinafter called 'mortgaged property'), to-wit:

"All those properties described in the Exhibit 'A' hereto attached and made a part hereof.

"Exhibit 'A'

"Aug. 7, 1941

"1. The Krier Lease. All the right, title, interest and estate of Mortgagor in and to the following described property situate in Barton County, Kansas, to-wit: The NW¼, Section 18, Township 16 South, Range 11 West, arising from or by virtue of any oil and gas mining lease or leases, and particularly in and to the oil, gas and other minerals, developed or undeveloped, and located on, in and under said property, Mortgagor now owning the full ⅞ths working interest created by and existing under and by virtue of a lease, dated January 2, 1940, from Peter J. Krier and wife to Deering J. Marshall, Inc., subject only to an oil payment in the amount of $8,000, payable from ¹⁄₁₆th of ⅞ths of all the oil or gas produced." (Emphasis supplied.)

Nineteen other properties located in either Barton, Rice or Mc-Pherson counties were embraced in the mortgage. The description of the other nineteen properties, insofar as material on the point in issue, was the same as that contained in the last above quoted paragraph.

With respect to the security for the indebtedness the mortgage, however, further provided:

"*And, in addition,* all further rights, interests and estates *of whatsoever kind or character* (whether in the nature of *fee simple title;* leasehold, *mineral or royalty interests;* franchise or easement rights; *or otherwise*) *now held, and all hereinafter acquired,* by the Mortgagor in and to each and every *tract of land* above mentioned *and all oil, gas and other minerals therein and thereunder* or which may be produced therefrom;

"Together with all and singular the tenements, hereditaments and appurtenances *now or hereafter* in anywise belonging or appertaining unto the Mortgagor's *present and future rights, interests* and *estates* in and to each and every such *tract of land* and all such oil, gas and other minerals, including (*but not confined to*) all right, title and interest now held, and all hereafter acquired, by the Mortgagor in and to (a) *any and all buildings, structures, fixtures and other improvements now or hereafter located on said land or any part thereof* and (b) . . . [Here were specified the oil in storage, machinery, equipment, fixtures and all personal property located on the premises and used in connection with the development and operation of the leasehold estates.] (c) any and all replacements of, substitutions for and additions to each and all of the foregoing;

"And together with all right, title, interest and claim now held, and all hereafter acquired, by the Mortgagor in and to all income and proceeds of every kind and character (whether in the nature of bonuses, rentals, *royalties or otherwise*) produced by, *attributable to or arising from all property* hereinabove mentioned or described (*real, personal or mixed*) and each and every part thereof at any time subsequent to 7:00 o'clock A. M., on the 1st day of January 1943 including the proportionate share or shares of, all moneys and proceeds realized from the sale or marketing of all oil, gas and other minerals produced, saved, marketed or sold subsequent to such date and time from the

above mentioned land or any part thereof which (share or shares) *may be attributable to or payable by virtue of the Mortgagor's present or future ownership of any right, title, interest, estate or claim in or to said land* or the production therefrom, whether by virtue of *contract, agreement or otherwise;* and a lien upon *all of the above property,* including all such income and proceeds, is hereby expressly created and granted unto the Mortgagee.

"To HAVE AND TO HOLD *All of said mortgaged property* unto the Mortgagee. forever; . . .

"All terms, conditions, covenants, warranties and agreements contained herein shall be binding upon the heirs, executors, administrators, personal representatives, successors and assigns of the Mortgagor, and shall be deemed and construed to be covenants *running with the estate or interest in the land;* . . . " (Emphasis supplied.)

An examination of the terms of the mortgage clearly discloses it was intended to pledge as security for the indebtedness not only the oil and gas leases described but also all other rights, interests and estates of the mortgagor *in the lands* described or mentioned whether real, personal or mixed and whether such interests, rights or estates in the lands were presently owned or subsequently acquired in any manner.

It is true the amended petition alleged:

"That all the property particularly described and designated in said petition and in the exhibits attached thereto, was at the time of the execution of the said mortgage and at the time of the offering of the said mortgage for recordation in the office of the Register of Deeds of Barton county, Kansas, personal property; and since the said execution of the said mortgage, said property has been, now is, and remains personal property; that the said mortgagor in said mortgage has never at any time since the execution of the said mortgage owned any real estate interest embraced within the terms of said mortgage:"

Manifestly the decision of the register of deeds, with respect to the fees, had to be made on the basis of the instruments tendered for recording, and not on the basis of a petition filed subsequently which alleged the mortgagor had, and has, no interest in the real estate described in the mortgage. The mortgages purported to cover all rights and interests in the real estate described which the mortgagor presently owned and which it might subsequently acquire. It is not the official duty of the register of deeds to conduct an investigation and examination of instruments and conveyances, whether recorded or not, in order to ascertain whether a mortgagor actually has some present interests or rights in real estate described in a mortgage. Surely that official is not required to record mortgages which purport to cover also such future interests in the real estate as the mortgagor may acquire without exacting the statutory fees.

Appellant argues that for the purpose of a demurrer the allegations of the amended petition should be accepted as true and that it is therefore now conceded appellant had, and has, no interest in the real estate described in the mortgages. One trouble with that contention is the mortgages were also a part of the amended petition and they speak for themselves with respect to the nature and character of the instruments tendered to the register of deeds for recording. His duty was determined by the instruments which pledged real estate as well as personal property as security for the mortgage indebtedness. The amended petition also concedes the mortgages were not tendered to that official merely for filing, as is done in the case of a chattel mortgage, but that they were tendered for recording, were recorded, and were withdrawn by the mortgagee as are mortgages on real estate generally. It appears appellant placed its own construction upon the nature and character of the instruments when it tendered them for recording. It desired and obtained the protection which the recording of such instruments affords. It was properly required to pay registration fees for the recording of the mortgages pursuant to the requirements of G. S. 1935, 79-3102.

Appellant next contends that if any fee was properly exacted under the statute it is entitled to a refund on the fees paid on each mortgage by reason of the fact that a similar fee previously had been paid on a part of the mortgage indebtedness. Appellant directs our attention to the mortgage provisions which disclose that the new mortgages were in a much larger amount than the former mortgages and that the new mortgages, to the extent of the amount of the old mortgages which amount was stated in the new mortgages, were substitutions for the former mortgages.

Does the statute provide an exception under these circumstances and require payment of the mortgage registration fee only upon the amount by which a new note and mortgage exceed the old mortgage indebtedness? G. S. 1935, 79-3102, provides:

"Before any mortgage of real property, or renewal or extension of the same shall be received and filed for record on and after the first day of March, 1925, there shall be paid to the register of deeds of the county in which such property or any part thereof is situated, a registration fee for each one hundred dollars and major fraction thereof, of the principal debt or obligation which is secured by such mortgage, the sum of 25 cents; *that no registration fee whatsoever* be paid, collected or required for or on *any mortgage or other instrument, given solely for the purpose of correcting or perfecting* a previously

recorded mortgage or other instrument, *or for the purpose of providing additional security for the same indebtedness,* where the registration fee herein provided for has been paid on the original mortgage or instrument: *Provided, however,* That the register of deeds shall receive no additional fees or salary by reason of the receipt of fees as herein provided: *Provided further,* That after the payment of the registration fees as aforesaid the mortgage and the note thereby secured shall not otherwise be taxable." (Emphasis supplied.)

It will be observed the fee is required to be paid on any mortgage of real property, or renewal or extension of the same, before it is received and filed for record. The only exceptions are in cases where a mortgage or instrument is given *solely* for the purpose (1) of correcting or perfecting a previously recorded mortgage or other instrument; or (2) for the purpose of providing *additional security for the same indebtedness* where the registration fee has been paid on the original mortgage or instrument.

It is not contended the new mortgages in question were given for the purpose indicated in exception (1) above. Appellant argues that in the new mortgage in the sum of $720,000, involved in the second count, it was required to and did pledge all of the oil and gas leases owned by it at the time and that the new mortgage, as a matter of fact, was an additional mortgage in the sum of $200,000. There is nothing in that mortgage which discloses the additional security pledged therein was pledged *solely* for the purpose of providing additional security for the "same indebtedness" represented by the old mortgage note. Moreover, in the absence of such a showing it would rather appear the additional property was not pledged solely to secure the "same indebtedness" represented by the old mortgage note but that it was required and pledged to secure the larger and entire indebtedness represented by the new mortgage note. There is nothing before us which requires a contrary conclusion with respect to the mortgage involved in the other count of the petition.

Language relied upon as creating an exemption from taxation must be strictly construed and the party claiming the exemption must bring himself clearly within the exemption. (*Clinton v. State Tax Commission,* 146 Kan. 407, 423, 71 P. 2d 857, and cases therein cited.) This, appellant has not done.

In view of the conclusions reached other matters suggested by appellant need not be treated. The order sustaining the demurrer to the amended petition is affirmed.