No. 41,210

MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, *Appellee*, v. RUFUS A. DEERING, As Register of Deeds of Sedgwick County, Kansas, and MARIE WARDEN, As County Treasurer of Sedgwick County, Kansas, *Appellants*.

(336 P. 2d 482)

Opinion filed March 7, 1959.

*Robert H. Nelson*, of Wichita, argued the cause, and *W. A. Kahrs* and *Patrick F. Kelly*, both of Wichita, were with him on the briefs for the appellants.

*Ralph M. Hope*, of Wichita, argued the cause, and *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Richard W. Stavely, Charles S. Lindberg* and *Ronald M. Gott*, all of Wichita were with him on the brief for the appellee.

The opinion of the court was delivered by

JACKSON, J.: This is an appeal from the decision of the district court holding that the Missouri Pacific Railroad Company need not pay the sum of $262,969.96 to the Register of Deeds of Sedgwick County to cover the mortgage registration "fees" due on two mortgages made by the railroad on all of its property. The suit was one filed by the railroad to recover these taxes which had been paid to the defendant county officials under protest and the county officials appeal from the adverse decision in the district court.

The case below was submitted to the court upon an agreed statement of facts which we shall condense to a certain extent. The Missouri Pacific for approximately twenty-three years prior to March 1, 1956, had been in reorganization proceedings in the United States District Court for the Eastern District of Missouri, Eastern Division, under the provisions of Section 77 of the Bankruptcy Act (U. S. C., Title 11, Section 205) and all of the property of the railroad had been owned and operated by the trustees appointed by the court and under the jurisdiction of the court.

The bankruptcy proceeding as to the Missouri Pacific Railroad was terminated by a consummation order and final decree signed by the court on March 1, 1956. Paragraph numbered 5 of the agreed statement of facts reads as follows:

"5. Under the provisions and requirements of said plan of reorganization and under the provisions and requirements of said Consummation Order and by approval and authority of the Interstate Commerce Commission and said court, two mortgages were executed and issued by plaintiff, such mortgages being a First Mortgage dated January 1, 1955, in favor of Boatman's National Bank of St. Louis as Trustee, and a General (Income) Mortgage dated January 1, 1955, in favor of Manufacturers' Trust Company and Charles Herman as Trustees, which said mortgages covered and described said railroad and other property owned by plaintiff in Kansas and other states."

A copy of Section 10.04 of the federal court's final order is made a part of the agreed statement of facts and will be referred to later in this opinion.

It was further agreed between the parties that the defendants were the duly elected, qualified and acting register of deeds and county treasurer of Sedgwick County; that the defendants refused to accept the two mortgages issued under the terms of the consummation order of the federal court for registration without the payment of the mortgage registration fees as provided in G. S. 1949,

79-3101 *et seq.;* that the plaintiff thereupon paid to the register of deeds the sum of $262,969.96, being the amount of fees due to the various counties in Kansas where the property of the plaintiff is located, together with a written protest which was delivered to the register of deeds and to the county treasurer; a true copy of the written protest is attached to the agreed statement of facts. The parties further agreed that the money so paid under protest has been held by the defendant county treasurer and has not been distributed to any of the counties to which the monies would be apportioned under the provisions of the statute (G. S. 1949, 79-3105).

There was no dispute about the amount of the taxes collected, if said tax was due, nor about the manner in which the same would be apportioned among the fifty-six counties in Kansas where the property of the railroad is located. The sole question decided by the district court upon the agreed statement of facts appears to have been the liability of the Missouri Pacific Railroad under the law to pay this tax. The county officers appeal from the decision holding that the railroad mortgages might be registered without payment of the mortgage registration fees due on the proportion of the amount of the railroad notes or bonds secured by liens on real estate in Kansas.

There is a preliminary matter which must be disposed of before we can reach the merits of this appeal. Appellants' assignment of errors herein were as follows:

"1. The court erred in granting judgment in favor of the plaintiff and against the defendants.

"2. The court erred in overruling defendants' motion for a new trial."

Appellee earnestly urges that the above assignments are wholly insufficient to bring the questions in the instant appeal before the court. As to the first assignment, the case of *Cimarron Co-Operative Equity Exchange v. Warner,* 166 Kan. 190, 200 P. 2d 283, is cited together with many others to like effect. In the Warner case, *supra,* this court said:

"This court has repeatedly held that an assignment of error to the effect the trial court erred in rendering its judgment amounts to nothing more than a statement the decision is wrong, does not specify any error and presents no reviewable ruling to an appellate court. (See *Hamilton v. Binger,* 162 Kan. 415, 176 P. 2d 553, and cases there cited.)" (p. 192.)

It will be noted that the Warner case was appealed to this court "after a full and complete trial" in which evidence had been intro-

duced by both parties. In the case now before the bar, the matter was submitted to the trial court upon an agreed statement of facts and the court's decision thereon was very similar to a ruling on a demurrer. As we noted above, only a question of law can be involved in this case. Perhaps, appellants would have been more specific, if the first specification of error had read, "the trial court erred *as a matter of law* in granting judgment in favor of the plaintiff." But, since an error in law is the only error which could be appealed in this case, we are disposed to hold the first assignment of error sufficient to raise the questions here involved.

In considering the important questions raised by the appeal, we shall first consider the nature of the so-called mortgage registration "fee." The lending of funds secured by liens on real estate has been an important business from the beginning of the history of this state. There has always been a companion question as to the method and means by which these funds so secured, as well as other invested funds, should be taxed by the state. It will be remembered that in the early history of the state, the chief revenue of all governmental units came from ad valorem property taxes. It will be remembered that article 11, section 1, of the state constitution was amended by the people in 1924 to read in part: "Mineral products, money, *mortgages,* notes and other evidences of debt may be classified and taxed uniformly as to class as the legislature shall provide."

After the adoption of the above amendment and as authorized thereby the legislature enacted the statute providing for the mortgage registration fee (Laws 1925, ch. 273, now appearing as G. S. 1949, 79-3101 to 79-3107a). Neither the legislature nor this court has shown any disposition to disguise the evident fact that the mortgage registration fee is a tax. In section 79-3103, it is provided that after the payment of the tax of twenty-five cents on each one hundred dollar valuation of the secured note *"the note secured thereby shall not be otherwise taxable."* Thus, the legislature not only recognized the "fee" to be a tax, but provided that it should be in lieu of all present and future taxes.

This court has always recognized that the mortgage registration fee constituted a tax. (See *Davis-Wellcome Mortgage Co. v. Haynes,* 119 Kan. 1, 237 Pac. 918; *Voran v. Wright,* 129 Kan. 1, 281 Pac. 938, on rehearing, 129 Kan. 601, 284 Pac. 807; *Citizens Bank v. State Tax Commission,* 132 Kan. 5, 294 Pac. 940; *Home Owners' Loan Corp. v. Anderson,* 145 Kan. 209, 64 P. 2d 14; *Assembly of God v. Sangster,* 178 Kan. 678, 290 P. 2d 1057.)

In the early cases just cited, it may be noted the mortgage registration fee was objected to not on the ground of discrimination against money invested in real estate mortgages, but as amounting to a discrimination in favor of such funds and against other invested capital. We believe that the present case is the first time the suggestion has been made that the mortgage registration fee was discriminatory by virtue of its own provisions.

It may be noted that money and other invested capital is taxed at the rate of five mills on the dollar (twice the rate imposed on money loaned on notes secured by real estate mortgages) by G. S. 1949, 79-3108 to 79-3120. Certainly, holders of real estate mortgage notes cannot be heard to complain of discrimination.

The principal contention made by the Missouri Pacific Railroad Company to sustain the position that the mortgages on the property of the railroad should be registered without paying the registration "fee" or tax is that such a procedure has been ordered by the federal court in its consummation order referred to *supra* in the agreed statement of facts. The pertinent section of the order reads:

" 'Upon payment of their proper recording and filing fees, all recording officers of recording districts (including Parishes and Cities, States and Counties) in which the properties of the Reorganized Company shall be located after the Consummation Date shall record or file for record this Order as well as all documents the execution of which is directed in this Order, or in the documents herein approved, as may be tendered to them for filing or recording, and to make such marginal or other notations in their records as may be necessary or appropriate to evidence and to record the true intent and purpose of all such documents tendered to them for filing or for recording, the laws of any state to the contrary notwithstanding.' "

We must quite frankly state that it seems most difficult to read the above paragraph of the order to direct the course urged by the appellee. It might even be less difficult to construe the paragraph as express authority to pay the "mortgage recording fees." Certainly some element of taxation inheres in all such "fees."

Indeed it seems strange to believe that the court was declaring that the new railroad bonds in the hands of the mortgagees should be exempt from all taxes imposed by the states throughout the life of the bonds. Yet that would be the effect of the order should it be construed as contended by the railroad.

That the mortgage registration fee or tax is in reality a tax placed on the mortgagee and not upon the mortgagor (the railroad) is pointed out and made apparent in the cases of *Home Owners' Loan*

*Corp. v. Anderson,* and *Assembly of God v. Sangster,* both supra. In the last case the court said:

"One answer to this contention is that the legislature has seen fit to deal with the subject exempting church property from taxation (G. S. 1949, 79-201), but, as previously stated, the mortgage registration fee act contains no provision whatever exempting a mortgage on church property from payment of the required fee as a prerequisite to recording. Furthermore, it is the mortgagee, and not the mortgagor, who is interested in seeing that a mortgage on real estate is recorded, and it is he who pays the fee in question.

"We are aware of nothing in either the federal or our own constitution which prohibits the collection of this fee. Its collection is in no way an interference with or restraint upon religious activity. One reason is that, as previously stated, it is the mortgagee, not the mortagor, who is interested in recording a mortgage, and who pays the fee. And, as a practical matter, the fact that a mortgagor and mortgagee agree between themselves that the former will reimburse the latter for the amount of the fee does not, from a legal standpoint, alter the situation, and in no sense of the word does the collection of the fee amount to an interference with religious activities."

The words "the laws of any state to the contrary notwithstanding" as used in the consummation order are taken from U. S. C., Title 11, section 205f, which reads in part:

" 'Upon confirmation of the plan, the debtor and any other corporation or corporations organized or to be organized for the purpose of carrying out the plan shall have full power and authority to and shall put into effect and carry out the plan and the orders of the judge relative thereto under and subject to the supervision and control of the judge, the laws of any state or the decisions or order of any state authority to the contrary notwithstanding.' 11 U. S. C. A. 205 *(f)*."

There can be no question as to the power of the federal court sitting in bankruptcy to provide for a plan of reorganization for the debtor corporation. But it would seem that section 205f was directed toward the court's control over the plan as to possible corporate reorganization and the issuing of stock and other evidence of interests therein which are clearly within the plenary jurisdiction of the United States courts and of the Interstate Commerce Commission.

No authority has been cited which would support the view that the federal court should be authorized to issue an order exempting the holders of the bonds of the reorganized corporation from all taxation on their interests in the new company. Our research would indicate only the contrary. (See 10 Remington on Bankruptcy § 4262; 5 Moore's Collier on Bankruptcy ¶ 77.22, p. 547; *In re*

*Missouri Pac. R. Co.,* 39 F. Supp. 436; *In re Chicago, R. I. & P. Co.,* 168 F. 2d 587; *Commission of Dept. of P. U. v. New York, N. H. & H. R. Co.,* 178 F. 2d 559; *State of Texas v. Group of Institutional Investors,* 191 F. 2d 265, certiorari denied, 342 U. S. 904, 96 L. Ed. 676, 72 S. Ct. 293; 343 U. S. 929, 96 L. Ed. 1339, 72 S. Ct. 757; and see memorandum opinion by Mr. Justice Frankfurter found in 343 U. S. 982, 96 L. Ed. 1372, 72 S. Ct. 1018.)

Appellee calls attention to the fact that the mortgages may not be received in evidence in any suit in any court of this state unless the registration tax has been paid ( G. S. 1949, 79-3107). Of course, it might be added the tax may be paid at any time before the trial of the case, and the statute at no time declares the obligation void regardless of the payment of the tax *(Lewis v. Independence Hotels Co.,* 150 Kan. 840, 96 P. 2d 605). It has been shown *supra* that the only discriminative features of the mortgage registration tax are favorable to the holders of such securities. These holders are entitled to registration and preservation of their liens and are entitled to use the state courts to collect and enforce their claims whether they be residents or nonresidents of the state. No question has been raised as to the situs for taxation of the obligations secured by the mortgages on Kansas real estate. Certainly such obligations receive protection from the state government.

It is quite evident to anyone having any knowledge of the problem of taxation that the collection of any tax upon intangible personal property presents difficulty. Of course, the question of the collection of taxes upon personal property of all kinds has always presented a problem. The legislature with authority from the state constitution framed this reasonable property tax in the form of an excise tax, providing that the tax would be paid at the time of recording of the mortgage for record. This was the first and usual time when most mortgagees use the special facilities furnished by the state for their benefit. If the fee or tax is paid at that time, the notes thereafter are tax exempt. However, if the tax is not paid because the mortgagee chooses not to record his lien, and runs the risk of loss of his priority, no penalty is exacted, his note and mortgage is still valid, but if he chooses to use the courts of the state to collect a judgment, he must pay the normal tax due on his property. Appellee's contention that this statute violates the Fourteenth Amendment to the United States Constitution appears to this court to be without merit.

Appellee also argues without citation of authority, which appeals to us to be pertinent, that payment of the tax would be a burden upon interstate commerce. Just how this postulate would be valid escapes us. The tax is chargeable without reference to residence of the owner on nonresidents and residents alike. All mortgagees owning obligations secured by liens on Kansas real estate are required to pay the reasonable fee if they wish to use the governmental facilities of the state provided for their benefit. In this case, as shown above, the tax is not assessed against the railroad and the benefits are furnished to the bondholders. It would seem to have been easily possible to provide a plan under which the mortgage registration fees or tax assessed upon these mortgages could have been charged to the bondholders or mortgagees in this case. The fact that apparently it was planned for the railroad to pay the same along with the other recording fees does not legally prevent the tax being assessed against the mortgagees. (See *Assembly of God v. Sangster,* supra.)

It would seem more logical to contend that a property tax upon the roadbed of the appellee was a burden upon interstate commerce than to object to this tax upon the property of the railroad's creditors.

Lastly, it is contended that the mortgage registration fee statute is unconstitutional under article 11, section 4, of the state constitution as having no object to which the tax is to be applied.

By the provisions of Section 79-3104 of the statute, the register of deeds is ordered to collect the taxes, keep an accurate record of same and pay the funds to the county treasurer at least once each day. The treasurer is directed to likewise keep a record of the funds so paid to him, and to credit the same to the county general fund. That is the fund to which all general taxes are credited. The contention is novel, but requires no further comment.

There is a presumption of legality as to all legislation. Moreover, taxation is the general rule, exemption the exception. *(Assembly of God v. Sangster,* supra.) It would appear that no valid reason has been urged upon the court which would show that the bonds of the Missouri Pacific Railroad Company in the hands of the holders thereof should not be charged with the normal mortgage registration fees when the mortgages securing those bonds were recorded by the defendant register of deeds. Therefore, the decision of the district court should be reversed.

It is hereby so ordered.