No. 46,496

MEADOWLARK HILL, INC., a Kansas Corporation, *Appellant*, v. VICTOR KEARNS, REX PRICE, ROBERT DAVIS, County Commissioners of Johnson County, Kansas, EDNA C. CRAIG, County Treasurer of Johnson County, Kansas, MARGUERITE M. BRENNER, Register of Deeds of Johnson County, Kansas, *Appellees-Cross-Appellants.*

(505 P. 2d 1127)

Opinion filed January 20, 1973.

*Peter A. Martin* of Breyfogle, Gardner, Martin, Davis and Kreamer, of Olathe, argued the cause, and *William V. McLeese,* of Kansas City, Missouri, was with him on the brief for the appellant.

*Bernis G. Terry,* of Olathe, argued the cause, and *James A. Wheeler,* County Attorney, and *Lyndus A. Henry,* County Counselor, were with him on the brief for the appellees and cross-appellants.

The opinion of the court was delivered by

KAUL, J.: This is an action to recover a mortgage registration fee paid under protest filed pursuant to the provisions of K. S. A. 79-2005 [now 1972 Supp.]. The critical question is whether a "Mortgage and Note Revision Agreement" constituted an extension of a mortgage of real property within the meaning of K. S. A. 79-3101 and 79-3102. From an adverse decision on this question appellant, which for convenience will be referred to as Meadowlark, appeals. Appellees cross-appeal from the trial court's conclusion that it had jurisdiction of the action under 79-2005. Appellees further challenge the trial court's refusal to find that the revision agreement constituted a new mortgage of real property within the meaning of K. S. A. 79-3101 and 79-3102.

Meadowlark is a Kansas corporation involved in the construction and development of an apartment complex in Johnson County. On June 14, 1968, Meadowlark filed of record in the office of the register of deeds of Johnson County its mortgage of certain real estate securing its note in the amount of $5,500,000.00 payable to the Southgate State Bank and Trust Company, a Kansas banking corporation, hereafter referred to as Southgate. On the filing of the mortgage Meadowlark paid a mortgage registration fee in the amount of $13,750.00 to the register of deeds in accordance with the provisions of K. S. A. 79-3101, *et seq.*

On March 24, 1970, an instrument entitled "Assignment of Mortgage," dated March 19, 1970, was filed in the office of the register of deeds. By the terms of this document Southgate assigned, transferred and set over to the New York Life Insurance Company, a New York corporation, the mortgage previously recorded on June 14, 1968. On the same date an instrument entitled "Mortgage and Note Revision Agreement," dated March 12, 1970, was tendered to the register of deeds for recording. Parties to the revision agreement were New York and Meadowlark. In addition to the change in parties, the revision agreement made the following changes with respect to the mortgage and note previously recorded on June 24, 1968—(*a*) increased the interest rate from 7½% per annum to 7⅞% per annum; (*b*) extended the term of said mortgage from April 1, 1992, to October 1, 1994; (*c*) added certain real estate as additional security; (*d*) modified the prepayment privilege by extending the period in which no privilege was reserved to prepay principal from

ten to thirteen years; and (e) changed the amount of the monthly payment from $42,227.42 to $42,225.01.

The register of deeds declined to file the revision agreement unless a mortgage registration fee was paid on the principal sum recited therein as a condition precedent to the filing thereof in accordance with 79-3101, et seq. Thereupon, Meadowlark paid the sum of $13,750.00 to the register of deeds and filed its notice of protest in which it protested the sum of $11,322.25, which it claimed to be that portion of the mortgage registration fee which was illegal. The basis of Meadowlark's contention is set out in the notice of protest, the substance of which reads as follows:

"This protest is made on the basis that the above Agreement is by its very nature an extension of a Mortgage which was originally filed in Book 713 of Mortgages at Page 209 and upon which a full mortgage registration tax was paid, said Mortgage in the original amount of $5,500,000.00. The Register of Deeds has required the payment of another registration tax on the basis of $5,500,000.00, or a tax of $13,750.00. It is the contention of the taxpayer that the above Agreement provides for an extension of the Mortgage only as to $970,648.68, being the amount which would remain due on the Mortgage at the end of the original term, as shown on the attached amortization schedule.

"It is the contention of the taxpayer that tax should be paid at the rate specified in the statutes on said amount of $970,648.68, or $2,426.75. The taxpayer, therefore, is now protesting the payment of $11,323.25 on the basis that that portion of the mortgage registration tax required by the Register of Deeds is illegal.

"The taxpayer further states that K. S. A. 79-3102 as interpreted by the Courts of Kansas clearly provides for the payment of only one tax on a principal indebtedness. This is stated in Fourth National v. Hill, 181 Kan. 683, 698, 314 P. 2d 312. Since the law specifically provides for a tax on an extension of a mortgage, it is quite clear that the tax need only be paid on that portion of the debt to which the extension relates, namely $970,648.68."

Thereafter, on April 21, 1970, Meadowlark filed its petition alleging that it had followed the protest procedure set forth in 79-2005 and further that:

"The substance of such protest filed by the Plaintiff herein was that a mortgage registration tax under K. S. A. 79-3102 is required to be paid only once on the same indebtedness and that the reference in said statute to paying a mortgage registration tax on an extension should apply only to that portion of the indebtedness extended, namely $970,648.68, and the Plaintiff was perfectly willing to pay $2,426.75 which would be the tax due on that last amount and Plaintiff, was, therefore, protesting the payment of $11,323.25 of tax which was illegally collected."

Subsequently, Meadowlark filed an amendment to its petition

adding the alternative contention that no tax at all was due and sought, in the alternative, the recovery of the entire sum of $13,750.00.

Defendants answered alleging in substance that the court did not have jurisdiction of the parties or subject matter for the reason that 79-2005 is not applicable to the payment of mortgage registration fees; in the alternative that the revision agreement was subject to a mortgage registration fee and, further, that even if Meadowlark was entitled to pay the fee under protest, under the provisions of 79-2005, it would be limited in its claim for relief to those items claimed in its statement of protest.

With the issues thus framed the case went to trial. The parties stipulated that the original mortgage, the assignment thereof, and the note and mortgage revision agreement were the only instruments in evidence which were offered or presented to the register of deeds at the time the revision agreement was tendered for filing of record.

As we have indicated, the trial court found generally for defendants, concluding that 79-2005 was applicable; that the court had jurisdiction of the parties and subject matter; and that the revision agreement was an extension of a mortgage of real property within the meaning of 79-3102. This appeal and cross-appeal were then perfected.

The present mortgage registration act was enacted in 1925 and now appears as K. S. A. 79-3101 to 3107a, incl. The section pertinent to the question presented herein is 79-3102 which reads:

"Before any mortgage of real property, or renewal or *extension of the same* shall be received and filed for record on and after the first day of March, 1925, there shall be paid to the register of deeds of the county in which such property or any part thereof is situated, a registration fee for each one hundred dollars and major fraction thereof, of the principal debt or obligation which is secured by such mortgage, the sum of 25 cents; that no registration fee whatsoever be paid, collected or required for or on any mortgage or other instrument, given *solely for the purpose of correcting or perfecting a previously recorded mortgage or other instrument, or for the purpose of providing additional security for the same indebtedness, where the registration fee herein provided for has been paid* on the original mortgage or instrument: *Provided, however,* That the register of deeds shall receive no additional fees or salary by reason of the receipt of fees as herein provided: *Provided further,* That after the payment of the registration fees as aforesaid the mortgage and the note thereby secured shall not otherwise be taxable." (Emphasis supplied.)

Words and phrases used in the Act are defined in 79-3101. With reference to the term "mortgage" this definition appears:

". . . The words 'mortgage of real property' shall include every instrument by which a lien is created or imposed upon real property, . . ."

The words "renewal" and "extension" are not defined and thus must be given their common meaning.

While the provisions of 79-3102 have been examined by this court on many occasions, (see case annotations compiled by the Revisor of Statutes) we find no case in which the precise question was presented. Cases dealing with the statute fall into two categories—one concerning the admissibility of instruments in foreclosure actions (e. g., see *National Bank of Tulsa v. Warren,* 177 Kan. 281, 279 P. 2d 262); the other consisting of actions to recover fees as taxes which were paid under protest pursuant to 79-2005 as in the case at bar. (e. g., see *Nebraska Hardware Mut. Ins. Co. v. Johnson,* 156 Kan. 756, 137 P. 2d 125.)

The parties meet head-on in their respective positions concerning the interpretation of the statute. The position of defendants, which was adopted by the trial court, is simply that the revision agreement is an "extension" as that term is used in the statute and that the agreement does not fall within any of the enumerated exceptions or exemptions, and thus the register of deeds rightfully required full payment of the fee before recording the revision agreement when tendered. Meadowlark, on the other hand, contends (1) the registration tax is measured solely by the amount of the principal debt secured and not by the interest rate, nor the duration of the mortgage; (2) that the revision agreement did not create or impose a lien upon real property; and (3) that the exemption provided in the statute for "correcting or perfecting a previously recorded mortgage" is broad enough to include the changes made in the revision agreement.

While the parties advance numerous propositions and arguments in their briefs, we believe the determination of the single issue— whether the revision agreement constitutes an extension of the original mortgage within the meaning of 79-3102 disposes of this appeal. The question must be determined within the framework of the language of the statute.

The statute specifically enumerates the transactions subject to the payment of the registration fee as a condition precedent to the filing of record. They are any mortgage of real property or renewal or

extension of the same. Likewise, the statute specifically exempts from the fee any mortgage or other instrument given for the purpose of correcting or perfecting a previously recorded mortgage or for the purpose of providing additional security for the same indebtedness. The revision agreement extended the original mortgage for a period of two and one-half years from April 1, 1992, to October 1, 1994. We are unable to give this provision of the agreement any other design, purpose or object than that of an extension within the meaning of the statute. In fact Meadowlark, in effect, gives the same evaluation to this portion of the agreement in its recitation of the substance of the agreement in paragraph four of its petition in which it stated in item (b): "Extending the time of payment of $970,648.68 of said Note." Also in its notice of protest, as we have previously indicated, Meadowlark states:

". . . It is the contention of the taxpayer that the above Agreement provides for an extension of the Mortgage only as to $970,648.68, being the amount which would remain due on the Mortgage at the end of the original term, as shown on the attached amortization schedule."

Neither can the revision agreement be said to fall within any of the exceptions enumerated in 79-3102. It was not given to correct any mistake, misunderstanding or errors in the original mortgage. No contention is made in this regard nor does it portend to perfect any inchoate aspect of the original mortgage. While Meadowlark argues the words "correcting or perfecting" are broad enough to cover the changes, it fails to point out any defect in the original mortgage that was corrected or perfected. The revision agreement was given to change, extend and revise the original mortgage rather than to correct any errors or to perfect any aspect thereof.

Concerning the addition of real property, Meadowlark admits that the addition had to do with title requirements and zoning laws rather than meeting a requirement for more security.

Insofar as pertinent to the issue herein, the substance of the revision agreement was to extend the mortgage two and one-half years, increase the interest rate and to increase the indebtedness in the amount of $970,648.68. The revision agreement specifically effects an extension of the mortgage and it was not executed for any of those purposes excepted by the statute.

This court has repeatedly recognized that the mortgage registration fee is a tax and replaces all other forms of taxation as to the obligations secured by the mortgage. (See *Missouri Pacific Railroad*

*Co. v. Deering,* 184 Kan. 283, 336 P. 2d 482, and cases cited therein). In the *Missouri Pacific* case we held:

"The statute providing for the collection of mortgage registration fees creates a tax which is normally paid by the mortgagee of a mortgage of real property. This tax replaces all other forms of taxation as to the obligations secured by the mortgage." (Syl. ¶ 2.)

Where language of a statute is relied upon as creating an exemption from taxation it must be strictly construed against the party claiming the exemption and he must bring himself clearly within the exemption. (*First Nat'l Bank v. Lovitt,* 158 Kan. 535, 148 P. 2d 738; *Clinton v. State Tax Commission,* 146 Kan. 407, 71 P. 2d 857.)

There is no procedure for investigation by the register of deeds set forth in the statute, thus the burden for showing a qualification for exemption is upon the person claiming the exemption on the basis of the instruments tendered for recording. On this point we said in *First Nat'l Bank v. Lovitt,* supra:

"Manifestly the decision of the register of deeds, with respect to the fees, had to be made on the basis of the instruments tendered for recording, and not on the basis of a petition filed subsequently. . . ." (p. 538.)

The *Lovitt* case, referred to, was an action to recover mortgage registration fees paid under protest such as the present action. The fee in contest was required by the register of deeds before recording a subsequent mortgage which was in part a substitution for a former mortgage upon which the registration fee had been paid. While the case dealt with a substitute mortgage rather than an extension effected by a revision agreement, we believe the analysis of 79-3102 appearing in the opinion fully supports and, in fact, commands the conclusion we have reached herein. After quoting the statute, this analysis appears:

"It will be observed the fee is required to be paid on any mortgage of real property, or renewal or extension of the same, before it is received and filed for record. The only exceptions are in cases where a mortgage or instrument is given *solely* for the purpose (1) of correcting or perfecting a previously recorded mortgage or other instruments; or (2) for the purpose of providing *additional security for the same indebtedness* where the registration fee has been paid on the original mortgage or instrument." (p. 540.)

In *Lovitt* this court further used this analysis in concluding that the statute did not provide an exception which required payment of the mortgage registration fee only upon the amount by which a new note and mortgage exceeded the old mortgage indebtedness. In

Meadowlark's own words the revision agreement added $970,648.68 to the former mortgage indebtedness. We discern no practical difference in the application of the statute with reference to "mortgage" or "extension." The terms are used in the alternative and are given equal significance. The legislature did not see fit to provide an exception applicable to the circumstances and we are governed by the well-established rule of construction against the party claiming an exemption to which we have previously referred.

We have carefully examined the cases cited by Meadowlark but we do not find them applicable or persuasive on the point in issue. Meadowlark quotes at length from a scholarly opinion written by Mr. Justice Rousseau A. Burch in *Wheeler v. Weightman*, 96 Kan. 50, 149 Pac. 977 (1915). The opinion includes an interesting account, from both a legal and historical point of view of tax turmoil exisiting at the time and in the past. Also, various reform efforts of the Kansas legislature, as well as legislative endeavors in some sister states, are noted. The question in *Wheeler*, however, was one of constitutional law. The holding in the case was that the mortgage registration act of 1915 (Chapter 250 of the Laws of 1915), a forerunner of 79-3101, *et seq.*, was in contravention of Art. 11, Sec. 1 of the Kansas Constitution requiring uniform and equal rate of assessment and taxation. In the opinion it was noted that in the election of 1914 the people refused to adopt a constitutional amendment permitting legislative clarification of the subject of taxation.

Following the *Wheeler* decision, an amendment to Art. 11, Sec. 1 of the Kansas Constitution was adopted in 1924 whereby the legislature was empowered to separately classify mortgages and certain other property for purposes of assessment and taxation. Thereafter, the legislature, in 1925, enacted the present mortgage registration act which was held constitutional in *Citizens Bank v. State Tax Commission*, 132 Kan. 5, 294 Pac. 940.

Meadowlark cites *Union Pac. Rld. Co. v. Stratemeyer*, 119 Kan. 8, 237 Pac. 873, the first case in which the new law was considered. The case simply holds that where a mortgage was given solely for the purpose of providing additional security for the indebtedness secured by an earlier mortgage no registration fee was required, this constituting one of the exceptions specified in the statute.

Meadowlark cited the case of the *Fourth National Bank v. Hill*, 181 Kan. 683, 314 P. 2d 312, in its notice of protest and also relies

upon it in its brief on appeal. The action was to foreclose a real estate and chattel mortgage given to the bank to secure a promissory note in the amount of $186,000.00. The mortgages covered properties in Harvey, Sedgwick and Butler Counties. The mortgages were first recorded in Harvey County and a mortgage registration fee of $465 upon the principal debt of $186,000.00 was paid. Defendant's contention that jurisdiction was lacking because the bank had failed to prove payment of a mortgage registration fee on the chattel mortgage was rejected by this court on appeal. The broad statement that 79-3102 does not require that a mortgage registration fee be paid twice upon the same debt does appear in the opinion but the actual holding of the case, with respect to the statute, deals with a situation where the same indebtedness is also secured by a chattel mortgage. The holding on this point is set forth in paragraph 7 of the syllabus:

"G. S. 1949 Ch. 79, Art. 31, requires that the registration fee be paid only once on a single indebtedness secured by a mortgage upon real property notwithstanding the debt may also be secured by a lien upon personal property. (G. S. 1949, 79-3101, 79-3102.)"

Likewise, *Frost v. Kirkpatrick*, 141 Kan. 517, 41 P. 2d 719, does not deal with the qualifications for the filing of record of an instrument. It was an action to foreclose a second mortgage in which the holder of the first mortgage intervened to foreclose its mortgage. The contention of the holder of the second mortgage that the first mortgagee's mortgage was not admissible in evidence, because a registration fee had not been paid on past due interest accumulated prior to the foreclosure was rejected by the court. The case simply holds that the statute does not require an additional fee to be paid on interest and taxes which might have accumulated prior to a foreclosure action.

The New York cases cited by Meadowlark are not persuasive because of marked differences in both statutory and case law. The New York Act (Consolidated Laws of New York Annotated, [Book 59—Tax Law] Tax on Mortgages, §§ 253-255) specifically provides an exemption applicable to a supplemental instrument or mortgage by which the indebtedness of a prior recorded mortgage is increased so that the registration tax is payable only on the amount of the increase. Application of the New York Act was described in the case of *Matter of Fifth Ave. Corp. v. Bragalini*, 4 A D 2d 387, 165 N. Y. S. 2d 312, in these words:

". . . That section provides that an 'agreement by which the indebtedness secured by any mortgage is increased or added to . . . shall be taxable as such upon the amount of such increase or addition'. Under the basic taxing section, section 253, as judicially construed, the tax is imposed upon an agreement modifying, extending or consolidating a mortgage or mortgages, only to the extent of any new 'principal debt or obligation' secured thereby. . . ." (p. 391.)

The legislature has not seen fit to provide a similar exemption in the Kansas Act.

Furthermore, the New York case law rule of statutory construction, pertaining to tax law, is that, where construction is necessary, a statute is to be construed strictly against the taxing powers and liberally in favor of the taxpayer. (*Mtr. of Suffolk Co. Loan v. Bragalini*, 5 N. Y. 2d 579, 159 N. E. 2d 164.) As previously noted, the converse rule prevails in this jurisdiction. (*First Nat'l Bank v. Lovitt*, supra; *Palmer v. Commission of Revenue and Taxation*, 156 Kan. 690, 135 P. 2d 899; and *Clinton v. State Tax Commission*, supra.)

In support of their cross-appeal defendants strenuously argue that 79-2005 is unavailable to a taxpayer desiring to challenge the payment of a mortgage registration fee. As we have noted, many appeals have appeared in this court where the action to recover was based on a protest filed under 79-2005. The question has never been answered, simply because the availability of 79-2005 has never been challenged. (*e. g.*, see *First National Bank in Dallas v. Lowman*, 193 Kan. 349, 395 P. 2d 313; *Missouri Pacific Railroad Co. v. Deering*, supra; and *Nebraska Hardware Mut. Ins. Co. v. Johnson*, 156 Kan. 756, 137 P. 2d 125.)

It is firmly established in the many cases previously noted, that the registration fee is a tax. We find nothing in the language of 79-2005 which indicates legislative intention that an aggrieved taxpayer should be foreclosed from the remedy. While mandamus is available (*Union Pac. Rld. Co. v. Stratemeyer*, supra.) or injunction pursuant to K. S. A. 60-907; as Meadowlark points out, such a proceeding as a practical matter would be no remedy at all where time was of the essence, as is usually the case in filing a mortgage of record. No complaint is made concerning the form, execution or service of the "notice of protest." Under the facts of this case, we hold that the provisions of 79-2005 are applicable to the payment of the mortgage registration fee in question and that the trial court had jurisdiction of the parties and subject matter.

In view of our disposition of the case, other points raised in connection with the appeal and cross-appeal need not be considered.

The judgment is affirmed in all respects.