(8 P.3d 39)

No. 83,692

GT, KANSAS, L.L.C., *Appellee*, v. RILEY COUNTY
REGISTER OF DEEDS, *Appellant*.

Opinion filed July
14, 2000.

*Lewis A. Heaven, Jr.*, and *Richard J. Plouff*, of Holbrook, Heaven & Osborn,
P.A., of Merriam, for the appellant.

*Charles S. Arthur, III* and *William J. Bahr*, of Arthur-Green, L.L.P., of Man-
hattan, for the appellee.

Before MARQUARDT, P.J., PIERRON, J., and ROGG, S.J.

PIERRON, J.: This appeal involves the interpretation of K.S.A.
79-3102, which reads in pertinent part:

"(d) No registration fee whatsoever shall be paid, collected or required for or
on: . . . . (3) any mortgage or other instrument upon that portion of the consid-
eration stated in the mortgage tendered for filing which is verified by affidavit to
be principal indebtedness covered or included in a previously recorded mortgage
or other instrument with the same lender or their assigns upon which the regis-
tration fee herein provided for has been paid."

Bowman and Curtin Enterprises (BCE), a Kansas general part-
nership consisting of two partners, Ronald D. Bowman and Chris
M. Curtin, owned two real estate tracts involving the Georgetown
apartment complex in Manhattan. In 1994, BCE entered into two
real estate mortgages on the subject property with Boatmen's First
National Bank (Boatmen's) totaling $7,880,000. The first mortgage
was filed with the Riley County Register of Deeds (County) on

August 18, 1994, and the second was filed on December 1, 1994. Boatman's paid a total of $20,488 for the mortgage registration tax.

Several changes in parties occurred thereafter. Boatmen's merged with NationsBank and NationsBank became the successor to the subject mortgages. On July 22, 1998, NationsBank assigned both mortgages to Washington Mortgage Financial Group, LTD. (Washington). This assignment was recorded with the County on July 23, 1998. The mortgage assignment listed BCE as borrower. On the borrower side of the transaction, BCE transferred title of the real property to Chris Curtin and Ronald Bowman as individuals. Later, Curtin and Bowman transferred title of the real property to GT, Kansas, L.L.C. (GT), which assumed title to the real property subject to the mortgage held by NationsBank.

On July 23, 1998, Washington issued a new mortgage on the subject property for $9,200,000. The mortgage listed GT as the mortgagor/borrower and Washington as the mortgagee/lender. GT presented the new mortgage to the County for filing, including an affidavit of mortgage registration fee paid, indicating that a portion ($7,880,000) of said mortgage ($9,200,000) was principal indebtedness included in a previously recorded mortgage. The County required a mortgage registration fee on the entire $9,200,000.

GT paid a mortgage registration fee of $23,920 on the entire new mortgage, but paid $20,488 in protest, arguing it was exempt from a mortgage registration fee for the existing indebtedness of $7,880,000. GT argued it should only be liable for a fee for the amount in excess of the original mortgage—$1,320,000. Washington has now assigned this new mortgage to Fannie Mae.

GT filed a mortgage registration protest with the Kansas Board of Tax Appeals (BOTA). BOTA found the ultimate issue to be whether GT was the same entity that originally mortgaged the subject property under the name of BCE. BOTA held the entity (BCE) that borrowed $7,880,000 in 1994 was legally distinct from the entity (GT) that borrowed $9,200,000 in 1998. BOTA strictly construed K.S.A. 79-3102(d)(3) to find that while the statute permits an exemption where the lender changes hands, there was no similar language for subsequent owners or their assignees of the mortgage.

BOTA's decision was not unanimous. A dissenting opinion relied on the Kansas Supreme Court precedent of *In re Application of Zivanovic*, 261 Kan. 191, 929 P.2d 1377 (1996), to disagree with the majority. Recognizing *Zivanovic* as not the exact factual equivalent of the current case, and also conceding that GT is a different legal entity from Bowman and Curtin Enterprises, the dissent focused on the "indebtedness," as had both the majority and the dissent in *Zivanovic*. Here, the dissent argued that Washington stood in the shoes of the original lender (Boatman's) and a portion of the indebtedness represented a refinancing of indebtedness on which the mortgage registration fee had already been calculated and paid.

GT appealed BOTA's decision to the district court. The court reversed, finding that BOTA had improperly focused on the different legal entity that executed the refinanced mortgage. The court stated K.S.A. 79-3102(d)(3) does not require the same entity as borrower; only $1,320,000 of new money was advanced; and it would amount to double taxation of Curtin and Bowman to require a registration fee for the full $9,200,000. The court ordered the County to reimburse GT the sum of $20,488.

The County contends the district court incorrectly interpreted the mortgage fee exemption provision in K.S.A. 79-3102(d)(3). The County argues the plain language of K.S.A. 79-3102(d)(3) and the legislative intent behind the statute preclude GT from receiving an exemption. The County also argues the district court did not give proper deference to BOTA's decision.

Kansas, as most other states, has a recording act which embraces mortgages as well as other instruments conveying or affecting real estate. K.S.A. 58-2221 provides in part:

"Every instrument in writing that conveys real estate, any estate or interest created by an oil and gas lease, or whereby any real estate may be affected, proved or acknowledged, and certified in the manner hereinbefore prescribed, may be recorded in the office of register of deeds of the county in which such real estate is situated."

The purpose of the act is to provide a system of registration for instruments affecting the title to land. The record is kept to insure the title and its history are preserved and protected. The statute

makes readily available to the public notice of title to property or liens and adverse claims against property. See *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs*, 235 Kan. 958, 960-61, 685 P.2d 866 (1984).

To insure that the cost of a system for recording mortgages is not borne by the public, but by those who wish the protection of notice, the legislature has required a registration fee. See K.S.A. 79-3102. Before any mortgage or extension of a mortgage of real property can be filed in the county where the property or any part of the property is situated, a registration fee is required to be paid. However, there are several exceptions to the payment of the registration fee, including the one set forth at K.S.A. 79-3102(d)(3).

The County contends the legislative intent of K.S.A. 79-3102 precludes a finding that GT is entitled to an exemption for payment of the mortgage registration fee. The County maintains the refinanced mortgage in the present case was a new borrower/mortgagor and new lender/mortgagee and that to permit an exemption would be "tantamount to creating a perpetual exemption for any financing instrument involving the same real estate, so long as the real estate is used as collateral for the financing."

The County also argues the district court did not give proper judicial deference to BOTA, since BOTA's ruling was supported by a rational basis. The County contends deference should be given to BOTA's ruling that the legal entity (BCE) that borrowed $7,880,000 in 1994 was legally distinct from the entity (GT) that borrowed $9,200,000 in 1998, and that K.S.A. 79-3102(d)(3) implies the refinancing must be by the same borrower for the exemption to come into play.

In this case we are called upon to construe K.S.A. 79-3102(d)(3) following its review by the Board, giving rise to our rules relating to interpretations of a statute by a state agency. Interpretation of a statute is a question of law, and our review is unlimited. *In re Tax Appeal of Boeing Co.*, 261 Kan. 508, Syl. ¶ 1, 930 P.2d 1366 (1997). The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to great judicial deference. Deference to an agency's interpretation is particularly appropriate when the agency is one of special com-

petence and expertise. *In re Tax Appeal of United Teleservices, Inc.*, 267 Kan. 570, 572, 983 P.2d 250 (1999). The agency's interpretation of a challenged statute may, in fact, be entitled to controlling significance in judicial proceedings. Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review. *Kansas Univ. Police Officers Ass'n v. Public Employee Relations Bd.*, 16 Kan. App. 2d 438, 440, 828 P.2d 369 (1991).

Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. The courts are the final arbiters in interpreting statutes and will take corrective action if an administrative body's interpretation is erroneous as a matter of law. See *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 749, 973 P.2d 176 (1999).

Statutes should be interpreted to effect legislative intent, *In re Application of Zivanovic*, 261 Kan. 191, Syl. ¶ 1, and should be given a reasonable interpretation to avoid absurd or unreasonable results. *State v. Le*, 260 Kan. 845, Syl. ¶ 4, 926 P.2d 638 (1996). In discerning legislative intent, the court is not, however, limited only to a consideration of the language used, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. *State v. Le*, 260 Kan. 845, Syl. ¶ 3.

The County maintains the plain language of K.S.A. 79-3102(d)(3) precludes application of the exemption in this case. The County states that K.S.A. 79-3102(d)(3) focuses on "indebtedness" and there is no evidence that GT owes anyone money. GT took title to the subject property subject to the existing mortgage established by Bowman and Curtin Enterprises. Consequently, the County argues GT had no indebtedness to Boatmen's, NationsBank, or Washington. The County argues *Zivanovic* is factually distinguishable and there is nothing in K.S.A. 79-3102(d)(3) to indicate the exemption applies to subsequent assignees of the borrower.

In response, GT argues the district court correctly found that BOTA improperly focused on the change of borrowing entity from partnership to limited liability company. GT states K.S.A. 79-3102(d)(3) has no stated requirement that the borrower of the original indebtedness be the same entity that borrows again or refinances for additional indebtedness. GT notes the partners in the partnership are the same as the owners of the limited liability company.

GT contends BOTA's focus on the borrowing entity rewrites K.S.A. 79-3102(d)(3) to add a statutory requirement that the same borrower must be refinancing the original debt. GT argues BOTA is not permitted to construct requirements not readily found in the statute. See, *e.g., State v. Gamble,* 20 Kan. App. 2d 684, 686, 891 P.2d 472, *rev. denied* 257 Kan. 1094 (1995)(even penal statutes are not read to add that which is not expressed in the statute).

The only case on record discussing the mortgage registration fee exemption in K.S.A. 79-3102(d)(3) is *Zivanovic,* 261 Kan. 191. The Zivanovics borrowed money from the First State Bank and gave a mortgage for $62,400. First State Bank paid the mortgage registration fee and assigned the note to Regional Investment Company, which assigned the mortgage to a Mellon Financial Services Corporation #9. Both assignments were recorded with the register of deeds.

The Zivanovics then refinanced the note and mortgage with the original lender, the First State Bank, and Riley County collected a mortgage registration fee. The second mortgage was for $65,250. The Zivanovics filed a protest. BOTA agreed with the Zivanovics and found K.S.A. 79-3102(d)(3) did not require payment of the registration fee for the $62,400 original mortgage amount. BOTA's decision was upheld by the district court, this court, and then the Kansas Supreme Court. In a 4-3 decision, the *Zivanovic* court held:

"Based on legislative intent and deference to the Board of Tax Appeals, we hold the mortgage registration fee exemption of K.S.A. 1993 Supp. 79-3102(d)(3) applies to an original lender, even if the lender has assigned the original mortgage and no longer holds it at the time the second mortgage is filed." 261 Kan. 194-95.

The question not raised in *Zivanovic* was whether the mortgage fee exemption in K.S.A. 79-3102(d)(3) applies where the borrower assigns title of the mortgaged property and the new assignee wants to refinance the loan. *Zivanovic* involved the same person asking for the second or refinanced mortgage. Here, it may be the same people asking for the new mortgage, but it is not the same legal entity. *Zivanovic* focused on the fact that the principal indebtedness was included in a prior recorded mortgage and that First State Bank had already paid the registration fee on the property securing the loan.

The questions raised in *Zivanovic* were at least addressed by K.S.A. 79-3102(d)(3). Here, the statute is unclear whether assignments by the borrower are exempt also. Kansas courts are clear that the mortgage registration fee is a tax. In questions involving tax exemption, taxation is the rule and exemption is the exception. See *Missouri Pacific Railroad Co. v. Deering*, 184 Kan. 283, 286, 336 P.2d 482 (1959). Because the mortgage fee is a tax, the exemptions found in K.S.A. 79-3102(d) must be strictly construed against the party who claims the exemption and such party must bring himself or herself clearly within the exemption provisions. See *Mid-Central v. Board of Tax Appeals*, 13 Kan. App. 2d 509, Syl. ¶ 5, 774 P.2d 363 (1989).

K.S.A. 79-3102(d)(3) generally applies to "any mortgage" which covers principal indebtedness included in a previous mortgage. This exemption applies to refinancing original debt. Implied within the concept of refinancing is that the one who is in debt is the party who is refinancing current obligations. The question is whether the language in K.S.A. 79-3102(d)(3) of "any mortgage" implies "any mortgage *by the original borrower*" or "any mortgage *at all regardless of the borrower.*"

When this court ruled on the *Zivanovic* case prior to it being affirmed by the Kansas Supreme Court, we addressed the County's concerns that if we allowed original lenders to use the exemption when the mortgage had been assigned, then the exemption would become a perpetual, vested right of any lender that has at one time held a mortgage on a parcel of real property regardless of whether there exists an assignment. Riley County also argued in *Zivanovic*

that granting the exemption would exempt all "refinancings" regardless of the lender or the existence of an assignment because the "indebtedness" was being substituted for another. We eased Riley County's concerns in stating: "The holding of BOTA and the district court seems limited, however, to the refinancing of a mortgage within the chain of assignment of the original mortgage." *In re Application of Zivanovic*, 22 Kan. App. 2d 184, 187, 913 P.2d 224 (1996).

In the case at bar, when the district court reversed BOTA's decision, it correctly stated that nowhere in K.S.A. 79-3102(d)(3) is it required that the same entity execute a new mortgage for the exception to take place. However, the statute focuses on "principal indebtedness." Washington may still hold the indebtedness, but GT is not indebted to anyone. In *Zivanovic*, it was a chain of the assignment of indebtedness that was still intact, and the Zivanovics were still the party liable for that "principal indebtedness." Here, the BCE still retains the indebtedness to Washington. GT may have legal title to the property, but it is not indebted to anyone. See *Fourth National Bank v. Hill*, 181 Kan. 683, 695, 314 P.2d 312 (1957) (ordinarily grantee of mortgaged property does not incur liability for payment of the mortgaged debt merely by taking title subject to the mortgage); 55 Am. Jur. 2d., Mortgages §§ 1133, 1135. The problem in this case is that GT did not assume any liability for the mortgage. GT cannot refinance a loan it never originated.

From *Zivanovic*, one can say that even though the lender assigns the mortgage, it is still the same indebtedness. However, subsequent assignees of the borrower, who do not assume liability for the mortgage, are not receiving an assignment of the indebtedness.

We therefore reverse the district court's decision and reinstate the decision of the Board of Tax Appeals.

Reversed.