CHICK *et al.* v. WILLETTS.

*Error from Shawnee County.*

Defendant below in Missouri made his note dated April 6th, 1858, payable one day after, and August 12th, 1858, in Kansas, gave a mortgage to secure it, stipulating therein that if default was made in the payment of the note for two years from the date of the mortgage, that instrument might be foreclosed; *held* that the contract as it stood after making the mortgage, was a Kansas contract; *held* that the clause in the mortgage was effective

to change the terms of the note and extend the time of payment with reference to the land, two years from the date of the mortgage, *held* that a suit brought thereon August 13th, 1863, was too late.

Distinctions between our statutes of limitation and those of England pointed out.

The distinctions between actions at law and suits in equity, are abolished. The statutes of limitation apply equally to both classes. They apply to the subject-matter and not to the form of the action.

An action upon a speciality or any agreement, contract or promise in writing must be brought within two years, whatever the relief demanded may be. *Sec. 20, Civil Code.*

Distinctions between mortgages at common law and in Kansas pointed out, and the history of the innovations traced.

" Equity of redemption " was the right of the mortgagor to have the rents and profits applied *pro tanto* to the cancellation of the debt, and the right to pay in money and apply to a Court of Equity for a removal of the cloud cast by the mortgage on the title.

In this State the common law attributes of mortgages have been by statute wholly set aside, and the ancient theories demolished.

The statute gives the mortgagor the right of possession even after breach, and confines the remedy of the mortgagee to an ordinary action and sale of the mortgaged premises—negativing the idea of title in the mortgagee.

A mortgage is a mere security, although in the form of a conditional conveyance, creating a lien upon the property, but vesting no title and giving no right of possession whatever, either before or after breach, and does not limit the mortgagor's right to control it except that the security shall not be impaired. He may pass title by sale subject to the lien. A mortgage, *semble* is included in Sec. 20, Civil Code.

The facts of the case appear in the opinion of the Court sufficiently to present the points therein decided.

The case was argued by *N. P. Case* for plaintiffs in error, and by *J. Brockway* for defendant in error.

*Nathan P. Case* for plaintiff in error, submitted:

1st. The note sued upon was entitled to days of grace, and the Court should have so charged.

2d. The Court erred in charging the-jury that the plaintiff's right of action was barred by the limitation of two years. *Auld & Auld* v. *Butcher & Butcher, Mss., Sup. Ct., Kan., Cobb, C. J.'s opinion.* [*Supra* 135.]

49

3d. The new promise in writing took the cause out of the Statute, and being a Kansas contract, the two year act did not apply. *Id.* 18 *Cal.* —; 11 *Wheat.* 309; 1 *Peter*, 364; 2 *Pick.* —; 3 *Iowa* 418; *Ang. on Lim.* 208; 6 *Bac. Ab.* 399.

4th. The old note was a good consideration for the new promise, and it being incorporated into the mortgage they become a Kansas instrument. 3 *Iowa*, 418.

5th. Statutes of limitation being in the nature of penal acts are to be strictly pursued.

6th. The mortgage being good at the *time* the suit was brought, plaintiff had a right to a sale of the land although the note may be barred. *Ang. on Lim.*

7th. The debt being morally due, the plaintiff had a right to a decree of foreclosure against the land. 2 *Hilliard Mort.*, 18 ; 8 *Metcalf*, 87.

8th. A mortgage is a security *in rem.* Plaintiff looks only to the land for payment. 2 *Hilliard Mort.*, 33 ; 22 *Pick.*, 71.

9th. The pleading was ample—plaintiff should have recovered. *See* 19 *Ill.*, 191; 12 *id.* 146; 1 *Pet.*, 151; 1 *Mich.*, 40; 4 *Penn, St.*, 321; 10 *id.* 129 ; 2 *R. I.*, 401; 14 *N. H.*, 422; 9 *Cow.*, 674.

10th. The statute commenced running from the last day of grace. *Ang. Lim.*, 96; 1 *Shep.*, (*Maine*) 45.

*J. & D. Brockway* for defendants in error, submitted:

The proposition that the making of a mort?  ·e by defendant to plaintiff to secure the payment ꞌꞧ ɟ note, constituted the making of a *new note* enti͘ ꝑto three days grace is *monstrous*.

There was no agreement in the mortgage which either amounted to a new note or which extended the time of the payment of the note which had been made.

The giving of the mortgage did not suspend the right of the plaintiff to bring an action on the note. The mortgage was a mere collateral security, and did not become a

Chick and others v. Willetts.

part of the note, nor take its place, nor in any way modify it. No agreement to extend the time for the payment of the note being found in the mortgage, none can be implied. *U. S.* v. *Hodge*, 6 *How.*, 279; 5 *Barb.*, 409; 8 *Pick.*, 458; 17 *id.* 150.

2d. The plaintiff's cause of action was barred when the suit was commenced. The note bears date April 6th, 1858, and was made in Missouri. The mortgage is dated August 12th, 1858, and was executed in Kansas. If the giving of the mortgage was an acknowledgment of an existing liability within the meaning of the statute, then the statute of limitations, again begun to run on the note n the 12th day of August 1858, and it is unimportant whether the note then came under the two or the three years statute, because in either case it was barred long before the action was commenced.

Granting that the note had three years to run after the date of the mortgage,—in that case an action could not have been maintained on the note later than the 12th day of August 1861. But the action was not commenced till the 13th day of August 1863. The note then being barred, did not the mortgage which was only collateral to the note, become unavailable?

When a note is *sold*, the mortgage given to secure its payment passes with it.

When a note is paid, the mortgage is gone.

When by lapse of time the note, the principal debt, becomes unavailable, is not the mortgage, the mere collateral security for its payment, equally unavaiable? *Jackson* v. *Sackett*, 7 *Wend.*, 94; 15 *N. Y.*, 505.

But the right of action on the mortgage, admitting that it survived the note, was barred before suit was brought. It was made and became a lien on the real estate described in it on the 12th day of August 1858, and was to run two years. In the computation of the two years, the 12th day of August 1858, the day of its date, must be included,

and consequently on the 11th of August 1860, it became due, and the statute then began to run, and the latest day on which the action could have been maintained, was the 11th of August 1863. But the action was not commenced till the 13th, two days afterwards. *Pierpont* v. *Graham*, 4 *Wash.*, 232; *See Ang. on Lim.*, 43.

If then the plaintiff's cause of action was barred, the substance of the charge of the Court was correct, and referring to the wrong statute, or giving a wrong reason for a correct conclusion, is no ground for a reversal of the judgment.

The record shows that the plaintiff's cause of action was barred and that he was not entitled to recover on the state of the pleadings. 1 *Hill.* 336; 12 *id.* 205; 2 *Com.*, 193.

As to rules for computation of time, see Angel on Limitations, 43; Presley *v.* Williams, 15 Mass., 193; 3 Denio, 12; Story on Prom. Notes, Secs. 211-12-13.

*By the Court*, CROZIER, C. J.

Two questions are presented by the record: *First*, Which law, the twentieth section of the code, or the second section of the "amendatory act," prescribes the limitation; and *Second*, When an action upon a promissory note, secured by a mortgage on real estate, is barred by the statute of limitations, has the mortgagee any remedy upon the mortgage? These are the facts: On the sixth day of April, 1858, at Kansas City, in the State of Missouri, the defendant executed to the plaintiffs his promissory note, payable one day after date. Afterwards, and on the 12th day of August of that year, the defendant, to secure the payment of the note, executed, in this State, a mortgage upon some lots in Topeka, which mortgage contained a stipulation that if default was made in the payment of the note for two years from the date of the mortgage, that instrument might be foreclosed, &c. On August 13, 1863, a suit was instituted upon the note and

mortgage, and the facts, as above stated, being admitted, judgment was rendered for the defendant. To reverse that judgment this proceeding is instituted.

The note having been made in Missouri, would, under the act of February 10, 1859, have been barred in two years from the passage of that act, if there were nothing else to be considered. By a stipulation in the mortgage, the time of payment was deferred two years from August 12, 1858.

The mortgage having been made in this State, was the arrangement, with reference to our statute of limitations, a Kansas or Missouri contract? Although no change was made upon the face of the note, yet the clause of the mortgage referred to was effective to change its terms as if written across its face. The time of its payment, with reference to the land, was extended two years. Its payment, as against the land, could not be enforced before that time; nor would the limitation laws begin to run against it until the expiration of that time. These changes in the original contract were effected by the paper which was executed in this State. The contract evidenced by the mortgage is essentially different from that set out in the note, and must control it. Therefore, the contract, as it stood, after the making of the mortgage, was a Kansas contract, and would not be barred in two years.

The statutes of limitation of this State are wholly unlike the English statute, and differ materially from the limitation laws of those States which have adhered to the common law forms of action and modes of procedure. Those statutes apply, in terms, to the form of the action at law, and contain no provisions concerning an equitable proceeding. If a party had concurrent remedies, one at law, the other in equity, courts of equity applied the limitation prescribed for the action at law. But in all other cases, they were said to act merely in analogy to the statutes, and not in obedience to them.

In this State, the case is entirely different. The distinction between actions at law and suits in equity is abolished; and the statutes of limitation apply equally to both classes of cases. They were made to apply to the subject matter, and not to the form of the action. In England and the States referred to, a limitation different from that prescribed for simple contracts in writing, was prescribed for specialties. Here, " an action upon a specialty, or any agreement, contract or promise in writing," must be brought within three years; and it matters not what the relief demanded may be, whether such as could formerly be obtained only in a court of law, or such as might have been afforded by a court of equity exclusively.

Mortgages here differ essentially from mortgages at common law, and in the States referred to. At common law, a mortgage was a conveyance with a defeasance, and gave the mortgagee a present right of possession. Upon it, even before the conditions were broken, he might enter peaceably or bring ejectment. If the condition was broken, the conveyance became absolute. If the money was paid when due, the estate revested to the mortgagor; if not so paid, the estate was gone from him forever. After a time, the law of mortgage was so modified that the legal title was not considered as having passed until the condition was broken. At a later day, another still more important innovation was made. While it was considered that, upon condition broken, the mortgagee became invested with the legal title, and was entitled to possession, yet, in that condition of things, his title was subject to a defeasance. The rents and profits operated as cancellation, *pro tanto*, of his conveyance; and when they reached a sum sufficient to reimburse his original investment, with such use as the law allowed, the legal title reverted to the mortgagor, and he would be entitled to the possession; and he had a right to facilitate this operation by payment of the money, and upon application to a court of equity,

his title would be disencumbered of the cloud the mortgage cast upon it. This right of the mortgagor was called "the equity of redemption," and, considering the then prevalent theory of mortgages, the phrase was peculiarly appropriate and expressive. The title had passed, but he had a right to redeem; and it is among the highest glories of equitable jurisprudence, that at so early a day the means of enforcing this right were supplied. Some of the States still adhere to the common law view, more or less modified by the real nature of the transaction; but in most of them, practically, all that remains of the old theories is their nomenclature. In this State, a clear sweep has been made by statute. The common law attributes of mortgages have been wholly set aside; the ancient theories have been demolished; and if we could consign to oblivion the terms and phrases—without meaning except in reference to those theories—with which our reflections are still embarrassed, the legal profession on the bench and at the bar would more readily understand and fully realize the new condition of things. The statute gives the mortgagor the right to the possession, even after the money is due, and confines the remedy of the mortgagee to an ordinary action and sale of the mortgaged premises; thus negativing any idea of title in the mortgagee. It is a mere security, although in the form of a conditional conveyance; creating a lien upon the property, but vesting no estate whatever, either before or after condition broken. It gives no right of possession, and does not limit the mortgagor's right to control it—except that the security shall not be impaired. He may sell it, and the title will pass by his conveyance—subject, of course, to the lien of the mortgagee.

If we are right in these views as to our statute of limitations, and the operation of a mortgage under our law, the English cases and cases in New York and Ohio, cited by counsel for plaintiffs, have no application to the case at

bar. The statutes of limitation under which they were made, make distinctions between notes and mortgages which do not exist here; and the operations of notes and mortgages there and here are totally different. The decisions are not authorities in this case, for the reason that they are not applicable, and cannot be made so. If our limitation law omitted mortgages, and our law of conveyances gave the right of possession to the mortgagee, some of them would be in point; but as neither of these conditions exist here, they throw no light upon the questions under consideration in the case at bar.

Our conclusions are, that the twentieth section of the code prescribes the limitation to an action on the note or mortgage, and as the three years expired on the 12th day of August, 1863, a suit commenced on the 13th was too late.

Judgment affirmed.

All the Justices concurring.