(774 P.2d 363)

No. 62,885

Mid-Central/Sysco Food Services, *Appellee*, v. Board of Tax Appeals, *Appellant*.

Opinion filed May 19, 1989.

*Donald Jarrett*, of Olathe, and *Bernis G. Terry*, of Olathe, for the appellant.

*Charles W. Kiffin*, of Kansas City, Missouri, and *Mark D. Hinderks*, of Stinson, Mag & Fizzell, of Overland Park, for the appellee.

Before DAVIS, P.J., LEWIS, J., and TERRY L. BULLOCK, District Judge, assigned.

LEWIS, J.: This is an appeal by Johnson County from a decision of the district court holding that an indenture of trust issued pursuant to an industrial revenue bond issue is not subject to a mortgage registration fee.

This case is the latest in a series of cases which have involved the question of whether a certain instrument issued in connection with an industrial revenue bond issue was a mortgage and, if so, whether it was subject to payment of a mortgage registration fee as a prerequisite to the recording of such instrument.

The Kansas Supreme Court in *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs*, 235 Kan. 958, 685 P.2d 866 (1984), and *City of Lenexa v. Board of Johnson County Comm'rs*, 237 Kan. 782, 703 P.2d 800 (1985), held that lease agreements entered into as an integral part of an industrial revenue bond issue were not mortgages and, therefore, were not subject to payment of the mortgage registration tax. In addition to those two cases, our attention has been called to a number of Board of Tax Appeals decisions holding that mortgages issued pursuant to an industrial revenue bond issue are nonexempt from the payment of the mortgage registration tax, and two opinions from Shawnee and Johnson District Courts which reach opposite conclusions on the question of the application of the mortgage registration fee act to such instruments. In addition to these decisions, there are at least two attorney general's opinions (Att'y Gen. Op. Nos. 79-10 and 75-231) which rule that a mortgage issued pursuant to an industrial revenue bond issue is exempt from payment of the mortgage registration fee. We shall attempt to resolve the conflict in those decisions.

We first note that, in this case, the bonds were issued and the agreements were drawn and signed prior to the decisions of the Supreme Court in *Misco* and *City of Lenexa*. As a result, the drafters of the instruments did not have the guidance of those two decisions in formulating the legal documentation to be used in support of the industrial revenue bonds issued by Johnson County.

The instant matter was originally referred to the Board of Tax Appeals, which ruled the instrument involved was a mortgage and was not exempt from the mortgage registration fee. That

decision was appealed to the district court on stipulated facts and later appealed to this court.

Factually, this case involved a 1982 industrial revenue bond issue by the City of Olathe (City) in which some $7,500,000 in industrial revenue bonds were issued to acquire certain real estate and to acquire, purchase, and construct certain improvements on that real estate. In concluding the bond issue, the City entered into a lease agreement with Mid-Central/Sysco Food Services, Inc. (Mid-Central), whereby Mid-Central leased the improvements from the City. At the same time, the City entered into an agreement denominated as an indenture of trust, wherein the parties were the City of Olathe, as issuer, and the First City National Bank of Houston, Texas (Bank), as trustee. All of these instruments were created and signed as an integral part of the industrial revenue bond issue in question.

Although Mid-Central was not a party to the indenture of trust, that document was tendered to the Register of Deeds for recording. Recording was refused pending the payment of the mortgage registration fee. In this case, the amount of the mortgage registration fee was $18,750. Mid-Central paid the fee and then filed a written statement of protest with the county treasurer and resorted to the Kansas Board of Tax Appeals for a refund. That refund was denied by the Board of Tax Appeals and a petition for judicial review of the Board's decision was filed. Upon judicial review, the district court reversed the decision of the Board of Tax Appeals and held that the instrument in question was a mortgage but was exempt from the provisions of the mortgage registration fee. This appeal followed.

The trial court which heard the matter on stipulated facts concluded that the indenture of trust was, in fact, a mortgage. The main impact of that ruling falls upon Mid-Central, which argues on appeal that such construction was incorrect and that the document, in fact, was not a mortgage. Johnson County counters this argument by insisting Mid-Central did not cross-appeal the decision of the district court as to the nature of the indenture of trust, and argues that we have no jurisdiction to consider the issue.

Therefore, we must first determine whether Mid-Central can raise the issue of the trial court's determination that a document was a mortgage when it failed to take a cross-appeal on that issue. We believe this question was considered and decided by the

Kansas Supreme Court in the *City of Lenexa* case, wherein it was determined that the issue could be raised even though no cross-appeal had been taken. In the *City of Lenexa* decision, the Kansas Supreme Court held:

"Appellees did not cross-appeal from the district court's ruling that the leases were mortgages. We have held failure to file a cross-appeal precludes the appellate court from reviewing the district court's rulings complained of by appellees.

"Appellees did argue, however, that the leases of this case cannot be mortgages due to this court's ruling in *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs*, 235 Kan. 958, 685 P.2d 866 (1984). In *Misco* this court held lease agreements entered into between a business and a city pursuant to the industrial revenue bond statutes are leases, not mortgages, and are therefore not subject to mortgage registration fees.

"The question of whether a lease, which has been established according to the specific conditions of the industrial revenue bond statutes, is a lease or a mortgage is a question of law which arises in this case on proven and admitted facts. This issue is also determinative of the case. Thus, a cross-appeal was unnecessary for this issue to be considered on appeal." 237 Kan. at 784.

Based upon the decision of the Supreme Court in the *City of Lenexa* case we hold that no cross-appeal was required for us to consider on appeal whether the indenture of trust was a mortgage. We next turn to that issue.

A question of whether an instrument is a mortgage within the context to which we address ourselves is resolved in a number of ways. However, the real question involved is whether the instrument is one whereby a lien is created or imposed upon real property. It has been held that no specific form or words are necessary to create a mortgage. *Assembly of God v. Sangster*, 178 Kan. 678, 679-80, 290 P.2d 1057 (1955). K.S.A. 79-3101 defines a mortgage of real property as "every instrument by which a lien is created or imposed upon real property, notwithstanding that the debt secured thereby may also be secured by a lien upon personal property."

*Misco Industries v. Board of Sedgwick County Comm'rs*, 235 Kan. at 962-63, defined the question and set forth the applicable law as follows:

"Is the 'Notice' of lease filed by Misco with the Register of Deeds a mortgage of real property as defined in K.S.A. 79-3101? At common law a mortgage was described as a conditional conveyance, a qualified estate or an estate upon a condition. In Kansas the common law attributes of a mortgage have been completely set aside. A mortgage is a mere security, in the form of a conditional conveyance, creating a lien upon the property, but vesting no title and giving no

right of possession whatever, either before or after a breach. A mortgage does not limit the mortgagor's right to control the real property other than that the security shall not be impaired. The owner of the real property may pass title by sale subject to the lien. *Chick et al. v. Willetts,* 2 Kan. 384 (1864). The term 'mortgage of real property' is defined in K.S.A. 79-3101, in relevant part, as including:
" 'Every instrument by which a lien is created or imposed upon real property, notwithstanding that the debt secured thereby may also be secured by a lien upon personal property.'

"The words 'real property' and 'real estate' are defined in K.S.A. 79-3101 as including 'all property a conveyance or mortgage of which is entitled to record as real property or interest therein under the laws of this state.' A lien is a hold or claim which one has upon the property of another as security for a debt or charge, as a tie that binds the property to a debt or claim for its satisfaction, as a right to possess and retain property until a charge attaching to it is paid or discharged, as a charge imposed upon specific property by which it is made security for the performance of an act, and as being synonymous with a charge or encumbrance upon a thing. *Assembly of God v. Sangster,* 178 Kan. 678, 680, 290 P.2d 1057 (1955).

"Here the Notice filed with the Register of Deeds sets forth a brief summary of the lease, references to the location of the complete document constituting the lease, a legal description of the property affected by the lease and specific provisions that the said property is pledged to the payment of the bonds. The Board contends that while such Notice may not take on the usual and ordinary form of a mortgage, it nevertheless constitutes a mortgage for purposes of the mortgage registration fee statutes. In determining whether an instrument is a mortgage or not, courts are guided to the substance of the transaction, not the form. The fact that an instrument is entitled Notice does not preclude it from being a mortgage. The ultimate determination in a case where it is sought to construe whether an instrument is a mortgage or not is the intention of the parties who executed the instrument."

We first note that the case before us is not controlled by *Misco,* as was the *City of Lenexa* case. In those cases, the instruments offered for recording were both leases and the court concluded that a lease issued pursuant to an industrial revenue bond issue was not a mortgage. In this case, there is a lease between the City of Olathe and Mid-Central, but that lease agreement was not offered for recordation, or if it was, it was refused recordation. We do not have the lease agreement before us as an element of controversy in this lawsuit.

The primary factor in resolving the nature of an instrument is the intention of the parties. We are able to ascertain the intention of the parties to the indenture of trust through the language employed in the instrument and through a recognition of the goals sought to be accomplished by that instrument. It is apparent that one of the key goals of all of the parties to the industrial

revenue bond issue was to make the bonds as attractive and saleable as possible. This could be accomplished only through the interest rate paid and the security offered to the prospective bond purchasers. The indenture of trust in question has, as one of its obvious purposes, the offering of security to prospective bond purchasers that the principal and interest on the bonds will, in fact, be paid in full. The indenture is first referred to in section five of the city ordinance published in connection with the industrial revenue bond issue as follows:

"Section 5. Authorization of Indenture of Trust. The City is hereby authorized to enter into the Indenture of Trust, dated as of August 1, 1982, in substantially the form attached to this Ordinance and marked Exhibit 'A,' under which the City *shall pledge and assign the Project and the revenues derived from the Project to the Trustee for the benefit of the holders of the Bonds* upon the terms and conditions as set forth in said form of Indenture, submitted to and reviewed by the Governing Body on the date hereof, with such changes therein as shall be approved by the representatives of the City executing the Indenture, such representatives' signatures thereon being conclusive evidence of their approval thereof." (Emphasis added.)

Thus, it is obvious in the wording of the ordinance that the ordinance contemplated the indenture would be a vehicle through which the bonds would be secured by the pledged and assigned property for the ultimate benefit of the holders of the bonds. The lease with Mid-Central is also mentioned in the city ordinance, but is mentioned as an entirely separate agreement whose purpose is to provide income in the way of rentals sufficient to pay the principal and interest on the bonds.

We can safely conclude that neither the City nor the Bank intended the indenture of trust to be a lease since there was already in existence a lease covering the same property, but between different parties. In addition, the indenture in question has none of the elements of a lease, as was the case in *Misco* and *City of Lenexa.*

We have examined the indenture agreement itself, and it provides in the granting clause as follows:

"That the City, in consideration of the premises, the acceptance by the Trustee of the trusts hereby created, the purchase and acceptance of the Bonds by the Holders thereof, and the sum of one dollar duly paid to the City by the Trustee, and of other good and valuable consideration, the receipt of which is hereby acknowledged, and in order to secure the payment of the principal of, redemption premium, if any, and interest on all of the Bonds issued and outstanding under this Indenture from time to time according to their tenor and

effect *and to secure the performance and observance by the City of all the covenants, agreements and conditions herein and in the Bonds contained, does hereby, subject to the terms and provisions of the Lease, pledge, assign and grant a security interest therein, unto the Trustee,* and its successors in trust and its assigns, forever, *all and singular the property and revenues described in paragraphs 1 and 2 below* (said property and revenues being herein referred to as the 'Trust Estate'), to wit:

"1. All rents, revenues and receipts derived by the City from the Facility including, without limitation, all rentals and other amounts to be received by the City and paid by the Company under and pursuant to and subject to the provisions of the Lease.

"2. All moneys and securities from time to time held by the Trustee under the terms of this Indenture, *and any and all other real or personal property of every kind and nature from time to time hereafter, by delivery or by writing of any kind, pledged or assigned as and for additional security hereunder by the City or by anyone in its behalf,* or with its written consent, to the Trustee, which is hereby authorized to receive any and all such property at any and all times and to hold and apply the same subject to the terms hereof." (Emphasis added.)

Section 202 of the indenture deals with the nature of the obligation and makes the purpose of the agreement very clear, stating as follows:

"1. The Bonds and the interest thereon shall be special obligations of the City payable solely out of the rents, revenues and receipts derived by the City from the Project, *and are secured by a pledge and assignment of the Trust Estate to the Trustee and in favor of the Holders of the Bonds, as provided in this Indenture. The City hereby pledges the Facility and the net earnings therefrom to the payment of the Bonds and the interest thereon.*"

Finally, schedules one and two of the indenture, which are attached to and made a part of the indenture, describe the property involved as follows:

"SCHEDULE 1
"All of the following-described real estate:
"Lot 1, Mid-Central/Sysco Addition, a subdivision in the City of Olathe, Johnson County, Kansas."

Schedule two states:

"All real, personal or mixed property located on the aforedescribed real estate at the execution of the Lease and which Lessee desires to convey to Lessor; the buildings and improvements, constructed and otherwise improved on the land pursuant to Article IV of the Lease, and all machinery and equipment and related property (referred to in the Lease as Leased Equipment) purchased pursuant to Article IV of the Lease. Said buildings and improvements constructed and otherwise improved on the Land pursuant to Article IV of the Lease and said Leased Equipment are referred to in the Lease as the Improvements."

When examining the indenture, analyzing the language em-

ployed, and keeping in mind the goal and purpose for which the indenture was created, it is clear that the indenture of trust before this court is a document which was utilized to provide security for the payment of the industrial revenue bonds. As a result of specific language in this document, the City pledges the property described in schedules one and two to the Bank as security for the payment of the principal and interest on the bonds to be issued. This pledge, while creating a lien on the property, vested no title and no right of possession in the Bank and did not limit the City's right to control the real property other than that the security should not be impaired. It appears from the clear language of the indenture of trust that the City is pledging or granting to the bank a lien upon certain real and personal property to be acquired by the industrial revenue bond issue. That is exactly the type of document contemplated by K.S.A. 79-3101 and K.S.A. 1988 Supp. 79-3102. Guided by the principles enunciated by the Supreme Court in *Misco* and other cases, we have no hesitancy in concluding that the indenture of trust is a mortgage within the meaning of K.S.A. 79-3101 and K.S.A. 1988 Supp. 79-3102.

Having affirmed the trial court's conclusion that the indenture was, in fact, a mortgage, we next turn to the trial court's decision that the mortgage was exempt from the payment of the mortgage registration fee because it had been issued as an integral part of an industrial revenue bond issue. On this point, we disagree with the conclusion reached by the trial court, concur in the conclusion reached by the Board of Tax Appeals, and reverse on this issue.

K.S.A. 1988 Supp. 79-3102(a) states:

"Before any mortgage of real property, or renewal or extension of such a mortgage, is received and filed for record, there shall be paid to the register of deeds of the county in which such property or any part thereof is situated a registration fee of $.25 for each $100 and major fraction thereof of the principal debt or obligation which is secured by such mortgage, and upon which no prior registration fee has been paid."

The statute quoted above is part of what is commonly referred to as the mortgage registration fee act. The Kansas decisions construing that statute have held that the fee contemplated by the statute is, indeed, a tax. *Assembly of God v. Sangster,* 178 Kan. at 679; *Home Owners' Loan Corp. v. Anderson,* 145 Kan. 209, 210, 64 P.2d 14 (1937). The mortgage registration fee act

applies only to mortgages on real estate. *National Bank of Tulsa v. Warren*, 177 Kan. 281, 285, 279 P.2d 262 (1955).

Since we have concluded that the indenture of trust in this lawsuit is a mortgage, it is subject to the mortgage registration fee imposed by K.S.A. 1988 Supp. 79-3102 unless, for some reason, it has been made exempt from the fee imposed by that statute.

The trial court in this case concluded that the indenture of trust was issued as an integral part of an industrial revenue bond issue and was exempt from the payment of the mortgage registration fee by virtue of the provision of K.S.A. 12-1746, which reads: "All revenue bonds issued by cities or counties pursuant to this act and all income or interest therefrom shall be exempt from all state taxes except inheritance taxes."

If the indenture of trust is exempt from the mortgage registration fee, then it must either fall within the provisions of K.S.A. 12-1746 or K.S.A. 1988 Supp. 79-3102.

In Kansas, we have a long line of cases which indicate that claims of exemption from taxation must be strictly construed against the party who claims the exemption. Illustrative of that rule is *Kenneth Godfrey Aviation, Inc. v. Smith*, 12 Kan. App. 2d 434, 746 P.2d 1068 (1987), in which this court stated:

"In questions involving tax exemptions, several rules of statutory construction are applicable. Taxation is the rule, and exemption is the exception. All doubts are to be resolved against exemption and in favor of taxation. Statutory provisions exempting property from taxation are to be strictly construed and the burden of establishing exemption from taxation is on the one claiming it. *T-Bone Feeders, Inc. v. Martin*, 236 Kan. 641, 645-46, 693 P.2d 1187 (1985); *Cessna*, 11 Kan. App. 2d at 380." 12 Kan. App. 2d at 436.

In the same way, the Kansas Supreme Court in *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 635, 694 P.2d 462 (1985), states the following rule:

"When construing requests for exemptions from ad valorem and property taxation, the following rules of construction apply: Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one requesting exemption. *In re Board of Johnson County Comm'rs*, 225 Kan. 517, 519, 592 P.2d 875 (1979). All doubts concerning exemption are to be resolved against the exemption in favor of taxation. *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, 851, 473 P.2d 1 (1970). The burden of establishing exemption from taxation is on the one claiming it. *Lutheran Home, Inc. v. Board of County Commissioners*, 211 Kan. 270, 505 P.2d 1118 (1973). Simply stated: Taxation is the rule, exemption is the exception."

When we apply the foregoing rules of construction to the facts

of this case, we are forced to conclude that the legislature has not seen fit to exempt an indenture of trust or a mortgage issued pursuant to an industrial revenue bond issue from the mortgage registration fee.

The clear language of K.S.A. 12-1746 indicates that it exempts from taxes only revenue bonds and all income and interest therefrom. A mortgage registration fee in this case does not tax the bonds themselves, which were not tendered for recording, nor does it tax the income or interest from the bonds. There is no doubt that the instrument in question is an integral part of the industrial revenue bond issue, but the fact is it simply does not come within the purview of the limited exemptions granted by K.S.A. 12-1746. The industrial revenue bond act itself was enacted in 1961 and in the past 28 years the legislature, although undoubtedly aware of the controversy surrounding the mortgage registration tax on instruments issued as a part of an industrial revenue bond transaction, has not seen fit to expand the exemptions set forth in K.S.A. 12-1746. In fact, a legislative interim committee report written in 1985 to the 1986 legislature acknowledged a growing number of protests surrounding the mortgage registration fee and stated:

"The Committee concludes that the court has established a policy that addresses most IRB-related leases. On the other hand, it notes that applicability of the mortgage registration tax to some types of leases (for example, leases containing mandatory purchase at the end of the lease term) has not yet been litigated and, therefore, remains uncertain. The Committee agrees, however, that no action should be taken at this time to establish statutorily a policy defining the status of IRB-related documents with regard to the mortgage registration tax."

This court is of the opinion that the granting of additional exemptions not clearly enumerated by K.S.A. 12-1746 is a legislative and not a judicial function. We decline to expand the clear language of K.S.A. 12-1746 to include within its purview exemptions for mortgages issued in connection with industrial revenue bond transactions when such documents are not clearly and precisely spelled out as being exempt under the statute.

We also note that 79-3102 was most recently amended by the legislature in 1985. That statute contains seven instances wherein the legislature has seen fit to exempt a mortgage from the payment of the mortgage registration fee. Despite this fact, it has not seen fit to specifically exempt a mortgage issued pursuant to an industrial revenue bond issue. We believe that the

failure of the legislature, in light of the litigation concerning the issue, to specifically exempt mortgages issued as an integral part of an industrial revenue bond issue to be of significance in our conclusion that the instrument in question is not exempt from the mortgage registration fee.

In making our decision, we are not unmindful of the argument presented to the effect that the mortgage registration fee imposed here is passed along to the holders of the industrial revenue bonds themselves, and thus accomplishes indirectly what cannot be accomplished directly. However, here we deal with a claimed exemption from taxation. We are bound by the rules of strict construction and by the philosophy that "taxation is the rule, exemption is the exception." We are simply unwilling to resort to an imaginative construction of the statute in question to allow an exemption which is not clearly and specifically spelled out.

We reverse the district court on this issue and enter judgment in favor of Johnson County, allowing it to retain the mortgage registration fee paid by Mid-Central.

Affirmed in part and reversed in part.