No. 83,692

GT, KANSAS, L.L.C., *Appellee,*
v. RILEY COUNTY REGISTER OF DEEDS, *Appellant.*
(22 P.3d 600)

Opinion filed April 27, 2001.

*Lewis A. Heaven, Jr.,* of Holbrook, Heaven & Osborn, P.A., of Merriam, argued the cause, and *Richard J. Plouff,* of the same firm, and *Stan Morgan,* of Manhattan, were with him on the briefs for appellant.

*Charles S. Arthur, III,* of Arthur-Green, L.L.P., of Manhattan, argued the cause, and *William J. Bahr,* of the same firm, was with him on the briefs for appellee.

*Lewis A. Heaven, Jr.,* and *Richard J. Plouff,* of Holbrook, Heaven & Osborn, P.A., of Merriam, were on the brief for *amicus curiae* Kansas Register of Deeds Association.

The opinion of the court was delivered by

LARSON, J.: We accepted the petition for review in this case to resolve a continuing controversy over the statutory exemption from payment of the mortgage registration fee when an existing indebtedness secured by a previously recorded mortgage upon which the mortgage registration fee has been paid is refinanced.

The statutory provision which is at issue in this appeal is K.S.A. 79-3102(d)(3), which states:

"(d) No registration fee whatsoever shall be paid, collected or required for or on: . . . . (3) any mortgage or other instrument upon that portion of the consideration stated in the mortgage tendered for filing which is verified by affidavit to be principal indebtedness covered or included in a previously recorded mortgage or other instrument with the same lender or their assigns upon which the registration fee herein provided for has been paid."

The facts are not in substantial dispute but the statutory language in issue has resulted in a mortgagee claim of exemption from a mortgage registration tax, a county register of deeds claim of taxation, a split Board of Tax Appeals (BOTA) ruling decreeing taxation, a district court decision allowing the exemption, and a Court of Appeals opinion refusing to apply the exemption.

With this highly summarized background, we first turn to the factual and procedural history of this case as set forth in the Court of Appeals' opinion:

"Bowman and Curtin Enterprises (BCE), a Kansas general partnership consisting of two partners, Ronald D. Bowman and Chris M. Curtin, owned two real estate tracts involving the Georgetown apartment complex in Manhattan. In 1994, BCE entered into two real estate mortgages on the subject property with Boatmen's First National Bank (Boatmen's) totaling $7,880,000. The first mortgage was filed with the Riley County Register of Deeds (County) on August 18, 1994, and the second was filed on December 1, 1994. Boatmen's paid a total of $20,488 for the mortgage registration tax.

"Several changes in parties occurred thereafter. Boatmen's merged with NationsBank and NationsBank became the successor to the subject mortgages. On July 22, 1998, NationsBank assigned both mortgages to Washington Mortgage Financial Group, LTD. (Washington). This assignment was recorded with the County on July 23, 1998. The mortgage assignment listed BCE as borrower. On the borrower side of the transaction, BCE transferred title of the real property to Chris Curtin and Ronald Bowman as individuals. Later, Curtin and Bowman transferred title of the real property to GT, Kansas, L.L.C. (GT), which assumed title to the real property subject to the mortgage held by NationsBank.

"On July 23, 1998, Washington issued a new mortgage on the subject property for $9,200,000. The mortgage listed GT as the mortgagor/borrower and Washington as the mortgagee/lender. GT presented the new mortgage to the County for filing, including an affidavit of mortgage registration fee paid, indicating that a portion ($7,880,000) of said mortgage ($9,200,000) was principal indebtedness included in a previously recorded mortgage. The County required a mortgage registration fee on the entire $9,200,000.

"GT paid a mortgage registration fee of $23,920 on the entire new mortgage, but paid $20,488 in protest, arguing it was exempt from a mortgage registration fee for the existing indebtedness of $7,880,000. GT argued it should only be liable for a fee for the amount in excess of the original mortgage—$1,320,000. Washington has now assigned this new mortgage to Fannie Mae.

"GT filed a mortgage registration protest with the Kansas Board of Tax Appeals (BOTA). BOTA found the ultimate issue to be whether GT was the same entity that originally mortgaged the subject property under the name of BCE. BOTA held the entity (BCE) that borrowed $7,880,000 in 1994 was legally distinct from the entity (GT) that borrowed $9,200,000 in 1998. BOTA strictly construed K.S.A. 79-3102(d)(3) to find that while the statute permits an exemption where the lender changes hands, there was no similar language for subsequent owners or their assignees of the mortgage.

"BOTA's decision was not unanimous. A dissenting opinion relied on the Kansas Supreme Court precedent of *In re Application of Zivanovic*, 261 Kan. 191, 929 P.2d 1377 (1996), to disagree with the majority. Recognizing *Zivanovic* as not the exact factual equivalent of the current case, and also conceding that GT is a different legal entity from Bowman and Curtin Enterprises, the dissent focused on the 'indebtedness,' as had both the majority and the dissent in *Zivanovic*. Here, the dissent argued that Washington stood in the shoes of the original lender (Boatmen's) and a portion of the indebtedness represented a refinancing of indebtedness on which the mortgage registration fee had already been calculated and paid.

"GT appealed BOTA's decision to the district court. The court reversed, finding that BOTA had improperly focused on the different legal entity that executed the refinanced mortgage. The court stated K.S.A. 79-3102(d)(3) does not require the same entity as borrower; only $1,320,000 of new money was advanced; and it would amount to double taxation of Curtin and Bowman to require a registration fee for the full $9,200,000. The court ordered the County to reimburse GT the sum of $20,488." 27 Kan. App. 2d at 746-48.

The Court of Appeals' opinion discussed the reasoning behind the recording act, the appellate court's unlimited review, contentions of the County, and contentions of GT. It also discussed *In re Application of Zivanovic*, 261 Kan. 191, 929 P.2d 1377 (1996), and the strict construction of tax exemptions, and then focused on the requirement that the one refinancing the initial indebtedness must

have the legal responsibility for its payment, which the opinion believed (incorrectly) that GT did not have. The Court of Appeals' opinion concluded:

"In the case at bar, when the district court reversed BOTA's decision, it correctly stated that nowhere in K.S.A. 79-3102(d)(3) is it required that the same entity execute a new mortgage for the exception to take place. However, the statute focuses on 'principal indebtedness.' Washington may still hold the indebtedness, but GT is not indebted to anyone. In *Zivanovic*, it was a chain of the assignment of indebtedness that was still intact, and the Zivanovics were still the party liable for that 'principal indebtedness.' Here, the BCE still retains the indebtedness to Washington. GT may have legal title to the property, but it is not indebted to anyone. See *Fourth National Bank v. Hill*, 181 Kan. 683, 695, 314 P.2d 312 (1957) (ordinarily grantee of mortgaged property does not incur liability for payment of the mortgaged debt merely by taking title subject to the mortgage); 55 Am. Jur. 2d., Mortgages §§ 1133, 1135. The problem in this case is that GT did not assume any liability for the mortgage. GT cannot refinance a loan it never originated.

"From *Zivanovic*, one can say that even though the lender assigns the mortgage, it is still the same indebtedness. However, subsequent assignees of the borrower, who do not assume liability for the mortgage, are not receiving an assignment of the indebtedness." 27 Kan. App. 2d at 753.

After we accepted review, GT filed a supplemental brief in which it argued that the issue before BOTA and the district court had been based only on the change of legal entity of the property ownership but that in both of the deeds of record, the grantees (Bowman and Curtin in the first deed and GT in the second deed) had assumed and agreed to pay the mortgage indebtedness. GT also argued the change of entity from partnership ownership to limited liability company ownership fell under the statutory provisions of K.S.A. 1998 Supp. 17-7654 (repealed L. 1999, ch. 119, § 87), which required GT to assume the liability for the indebtedness secured by the mortgage. GT further argued that under both the majority and dissent of *Zivanovic*, the exception was proper because the indebtedness refinanced included the principal of the original loan to Boatmen's, and GT also repeated the double taxation argument on which the district court relied.

The County countered by contending that GT could not now raise the fact it had assumed the indebtedness because it had not been raised in the proceedings below and GT's claim was based

on the bare assertions of GT's counsel and set forth in the appendix to its brief, which is not a substitute for the record itself. The County argued that even if GT's argument were considered, the statute focused on "indebtedness" and it had not been shown that GT had any enforceable liability for its payment and, therefore, no claim to the exemption.

As to the argument that K.S.A. 1998 Supp. 17-7654 resulted in the assumption of the indebtedness by GT as a matter of law, the County contended this is also a totally new argument not previously made which should not be considered and which would not change the result of the Court of Appeals' decision if it was. As to GT's *Zivanovic* argument, the County argues that case is clearly factually different and does not apply when the borrower changes. Finally, the County repeats its argument that the mortgage registration fee is in fact a tax, requiring exemptions to be strictly construed against the one claiming them and, regardless of GT's arguments, the Court of Appeals' result was correct.

This case has evolved on appeal from the question which was squarely before BOTA and the district court of whether the exemption applies when the parties owning property change the entity of their ownership to a result reached by the Court of Appeals based solely on whether the indebtedness was assumed during the transfer of title from a partnership to individuals to a limited liability company. This conclusion is clearly erroneous if we consider the wording of the deeds. And, if we hold the wording of the deeds may not be considered, we decide this case based on erroneous facts and, further, based on a decision which was never the question in issue before BOTA.

A review of the record in the proceedings before BOTA plus its order and dissent dated December 18, 1998, shows the crux of the argument of the parties was the legal effect on the claimed exemption due to the change in ownership of the property in issue from a partnership to individuals to a limited liability company and the subsequent refinancing with Washington. It was never, until the Court of Appeals' opinion, an issue whether GT was obligated for the prior indebtedness the instant it took title to the property. As BOTA member Lynn Goering said in her dissent:

"The only material issue is whether the reorganization of *the borrower* from a general partnership into a limited liability company before the second mortgage was executed precludes the second note from including the 'same indebtedness' as the loan secured by the original mortgage, and therefore defeats the claim for exemption."

When a petition for review is granted under our rules, the order granting review may limit the question on review (which we did not do in this case). Supreme Court Rule 8.03(g)(1) (2000 Kan. Ct. R. Annot. 58). This rule goes on to state:

"If review is not limited, the issues before the Supreme Court include all issues properly before the Court of Appeals that the petition for review or cross-petition allege were decided erroneously by the Court of Appeals. In civil cases, the Supreme Court may, but need not, consider other issues that were presented to the Court of Appeals and that the parties have preserved for appeal."

With our review being unlimited, we will consider the broad question raised by the County in its appeal of the district court decision: "[D]id the district court erroneously interpret and improperly apply K.S.A. 79-3102(d)(3)?" In doing so, we rely on the record setting forth the factual statements and legal contentions and arguments before BOTA as well as those made to the district court and on appeal.

This case involves the interpretation of a statute, which is a question of law over which our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). Our rules of statutory construction are well known and require us to interpret a statute to give the effect intended by the legislature, *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 981 (1990), construe the statute to avoid unreasonable results, *Wells v. Anderson*, 8 Kan. App. 2d 431, 433, 659 P.2d 833, *rev. denied* 233 Kan. 1093 (1983), and read the statute to give effect, if possible, to the entire act and every part thereof. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997). Ordinary words are to be given their ordinary meaning, and a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984).

Because the basic review in this case is of a BOTA decision, we are obligated to apply the doctrine of operative construction, which we have stated in this manner:

" 'The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. . . . Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review. If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps. The determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the courts. [Citation omitted.]' " *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 645, 983 P.2d 853 (1999) (quoting *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, 166, 815 P.2d 66 [1991]).

Finally, although the statute in issue speaks of a mortgage registration fee, we have always held that it is in fact a tax, with the purpose and reason for the tax well set forth in *Halliburton Co. v. Board of Jackson County Comm'rs*, 12 Kan. App. 2d 704, 707-08, 755 P.2d 1344, *rev. denied* 243 Kan. 778 (1988).

"In *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs*, 235 Kan. 958, 961, 685 P.2d 866 (1984), the court stated:
'The purpose of [K.S.A. 58-2221] is to provide a system of registration for affecting the title to land. The record is kept to insure the title and its history may be preserved and protected. The statute makes readily available to the pubic notice of title to property or liens and adverse claims against property.'
"In addition, the register of deeds must collect a registration fee before a mortgage, including renewals and extensions, can be filed for record. K.S.A. 1987 Supp. 79-3102)(2) provides:
'Before any mortgage of real property, or renewal or extension of such a mortgage, is received and filed for record, there shall be paid to the register of deeds of the county in which such property or any part thereof is situated a registration fee of $.25 for each $100 and major fraction thereof of the principal debt or obligation which is secured by such mortgage, and upon which no prior registration fee has been paid.'
"The mortgage registration fee is a tax. *Missouri Pacific Railroad Co. v. Deering*, 184 Kan. 283, 286, 336 P.2d 482 (1959). The tax imposed upon the mortgagee, here Halliburton, who is interested in filing the mortgage. This is to insure that the cost of recording mortgages is not paid by the public, but by those who seek the protection that the public notice affords. *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs*, 235 Kan. at 961.
"The mortgage registration fee is a revenue measure. *Potwin State Bank v. Ward*, 183 Kan. 475, 490, 327 P.2d 1091 (1958). If this were not the case, the

statute would not assess a fee for each one hundred dollar increment of the mortgage, as a set fee to cover the costs of recording the mortgage (no matter the amount) would be more reasonable. When considering the *Misco Industries* and *Potwin State Bank* cases it is clear the purpose of the registration fee is to cover the costs of recording the mortgage and to generate revenue."

With the interpretation we face, being that of an admitted taxation provision, we are finally presented with the contradictory contentions of the parties as to their tilt of questions in doubt. The County leads with its statement from a K.S.A. 79-3102 case:

" 'In questions involving tax exemptions, several rules of statutory construction are applicable. Taxation is the rule, and exemption is the exception. All doubts are to be resolved against exemption and in favor of taxation. Statutory provisions exempting property from taxation are to be strictly construed and the burden of establishing exemption from taxation is on the one claiming it.' " *Mid-Central v. Board of Tax Appeals*, 13 Kan. App. 2d 509, 517, 774 P.2d 363 (1989) (quoting *Kenneth Godfrey Aviation, Inc. v. Smith* 12 Kan. App. 2d 434, 436, 746 P.2d 1068 [1987]).

The County also quotes *Meadowlark Hill, Inc. v. Kearns*, 211 Kan. 35, 41, 505 P.2d 1127 (1973), which states that "[w]here language of a statute is relied upon as creating an exemption from taxation it must be strictly construed against the party claiming the exemption and he must bring himself clearly within the exemption. [Citations omitted.]"

GT counters with the equally persuasive argument that because this is admittedly a taxation statute, the following rule of construction is more applicable:

"Tax statutes will not be extended by implication beyond the clear import of language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced. [Citation omitted.] Where there is reasonable doubt as to the meaning of a taxing act, it will be construed most favorable to the taxpayer." *In re Tax Exemption Application of Kaul*, 261 Kan. 755, 766, 933 P.2d 717 (1997); accord *Equitable Life Assurance Society v. Hobbs*, 154 Kan. 1, Syl. ¶ 1, 114 P.2d 871 (1941).

GT further argues public policy dictates that in order to prevent double taxation, the mortgage registration fee should not be imposed upon that portion of the obligation on which it has already been paid.

We are not so naive as to not know the lending of money secured by mortgages on real property actually occurs in the great majority of the cases with the lender passing through to the borrower the burden of providing the funds to pay the mortgage registration fee/tax. This fact, unfortunately, has caused the focus in this case to be shifted to the borrower, who is not mentioned in any place in K.S.A. 79-3102(d)(3), as the exemption runs in favor of the "principal indebtedness covered or included in a previously recorded mortgage . . . *with the same lender or their assigns* upon which the registration fee herein provided for has been paid." (Emphasis added.)

We do not suggest that GT is not the real party in interest but rather that the entity filing the affidavit to claim the exemption was Washington, which falls directly and squarely within the clear language of the exemption as an "assign[ee] of the same lender" and thus a party which is clearly entitled to claim the exemption. The rights GT seeks to enforce are those of Washington.

The question then becomes whether Washington loses the right to claim the statutorily granted exemption because its borrowers were allowed to change the entity of ownership at the time the "principal indebtedness covered or included in a previously recorded mortgage" was refinanced and the amount of the principal indebtedness was increased. With no mention or restriction in the statute of the borrower in any way limiting the right to claim the exemption, its denial is not easily justified.

While we believe the factual gymnastics as to the changes in the form of the ownership of the title to the secured property are ultimately not material to our decision, we nonetheless return to the facts. Bowman and Curtin borrowed money from and executed two mortgages to Boatmen's, which through merger became NationsBank. When NationsBank assigned the notes and mortgages to Washington prior to the refinancing, Washington fell within the statutory definition of a "lender or their *assigns*."

Based on the tax protest and the statements before BOTA, the title to the mortgaged property was first held by BCE, which made Bowman and Curtin individually responsible for the principal indebtedness, a status which continued when they took title to the

mortgaged property individually. The transfer of the title to GT and its mortgage of the property to Washington took place contemporaneously. This became a nonrecourse loan on which Bowman and Curtin did not remain individually liable, although they executed all loan documents on behalf of GT, which was confirmed by their counsel in the proceedings before BOTA. It is undisputed that the sole and only owners of GT were Bowman and Curtin. The statement in the Court of Appeals' opinion that "GT is not indebted to anyone," 27 Kan. App. 2d at 753, is simply incorrect. GT is now indebted to Washington, which was the holder of the principal indebtedness and which by its actions, allowed GT to refinance its debt and advanced to GT additional consideration. The change of the entity of property ownership does not, under the clear wording of K.S.A. 79-3102(d)(3), preclude Washington from claiming the exemption on the principal indebtedness of $7,880,000. The mortgage registration fee is only due and owing on the additional consideration advanced of $1,320,000.

The parties have both claimed that the decision in *Zivanovic* is favorable to their position. The County's best argument is that we there recognized and followed a BOTA decision in allowing the exemption, which now requires us to do likewise where BOTA has disallowed the exemption and also because "all doubts are to be resolved against the exemption." *Mid-Central*, 13 Kan. App. 2d at 517.

GT contends that the exemption in *Zivanovic* was allowed to the original lender who had not been reassigned the mortgage, while here the institution which held the mortgage (Washington) fell precisely within the meaning of the "same lender or their assigns." GT argues the district court relied on the underlying philosophy of *Zivanovic* that the same indebtedness should not be charged twice with a mortgage registration fee. The district court in fact stated that "this case should be controlled by the philosophy underlying the decision in [*Zivanovic*] and a literal reading of the statute involved."

There are three opinions in the *Zivanovic* case: the Court of Appeals' decision which we affirmed found at 22 Kan. App. 2d 184, 913 P.2d 224 (1996), our opinion found at 261 Kan. 191, 929 P.2d

1377 (1996), and the accompanying dissent in that opinion. The facts were undisputed and were stated as follows:

"Highly summarized, the Zivanovics borrowed money from the First State Bank and gave a mortgage. The First State Bank paid the mortgage registration tax and assigned the note to a second financial institution, which assigned the mortgage to a third financial institution. Both assignments were recorded.

"The Zivanovics then refinanced the note and mortgage with the original lender, the First State Bank, and Riley County collected a mortgage registration fee." 261 Kan. at 192.

The holder of the first mortgage subsequently released that mortgage. The Zivanovics protested the payment of the mortgage registration fee. BOTA ruled that K.S.A. 79-3102(d) did not require the payment of a mortgage registration fee on the refinancing, the district court affirmed, the Court of Appeals affirmed, and we affirmed, although in a 4 to 3 decision.

The Court of Appeals' decision discounted the County's argument that BOTA's order would allow a perpetual unlimited exemption or exempt all refinances by stating: "The holding of BOTA and the district court seems limited, however, to the refinancing of a mortgage within the chain of assignment of the original mortgage." 22 Kan. App. 2d at 187. We need to remember that in *Zivanovic* the borrowers were the same individuals and a "same indebtedness" argument was discounted with a holding stating: "It is logical then that a new fee be charged only to that portion of the mortgage covering more than what had previously been covered in a prior mortgage, regardless of who holds the original mortgage. Only that amount would otherwise be unprotected [by the recording statutes]." 22 Kan. App. 2d at 188.

The majority opinion of our court stated we were interpreting the statute to give it the effect intended by the legislature. We held that by adding the words "or their assigns" after the words "the same lender," the 1985 legislature intended to "give 'assigns' the same exemption extended to the original lender who paid the registration fee." 261 Kan. at 194.

The majority further reasoned that requiring reassignment before executing the replacement mortgage would require unneces-

sary cost, time, money, and effort, and there was no logical reason to do so in order to save the payment of a second registration fee.

The dissent focused on the fact the original lender had assigned the mortgage before the mortgagor sought refinancing with the original lender, and when the assigned debt is paid off a new "indebtedness" is created—not the same indebtedness on which mortgage registration tax was paid when the original mortgage was created. Recognizing that the tax is imposed on the mortgagee and not the mortgagor, the dissent noted the responsibility for payment of the registration tax falls on the party seeking to obtain the protection provided by the recording, and then stated:

"The *amicus curiae* brief of the Kansas Register of Deeds Association crystallizes the issue by saying that we must decide whether the fee exemption follows the indebtedness or the debtor. K.S.A. 1993 Supp. 79-3102 is most internally consistent if the (d)(3) exemption is read as following the indebtedness. *The exemption should follow the holder of the mortgage.*" (Emphasis added). 261 Kan. at 197.

Finally, the dissent disagreed with the majority's conclusion as to the legislature's reason for adding of the words "or their assigns," but that is not critical to our case as the meaning of that language is clear.

Based on this analysis of our holding in *Zivanovic*, the broad reading of the policy for the exemption inherent in our majority opinion, and the precise language of the dissent that the exemption should follow the holder of the mortgage (Washington in this case), our holding that Washington is entitled to the exemption logically follows. This result is consistent with our interpretation of the wording of (d)(3) that focuses only on lenders or their assigns and does not bring the entity of the borrower into the construction of the statute.

As we previously stated, "a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it." *Director of Taxation*, 236 Kan. at 455. K.S.A. 79-3102(d)(3) provides an exemption to lenders, which in this case is Washington. We do no violation to exemptions from taxation to construe the plain meaning of the statute to be limited to lenders and hold that the exemption is not

lost by the change of entity of the borrower under the facts of this case.

We believe this result follows the legislative intent of K.S.A. 79-3102(d)(3). It has been 5 years since our decision in *Zivanovic*, and if change is desired it is the responsibility of the legislature to do so and provide a more limiting statutory provision.

The Court of Appeals is reversed. The district court is affirmed.